The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. ITT Hartford is the carrier on the risk.
4. The date of the alleged injury is 20 December 1996.
5. Plaintiff's average weekly wage is to be determined by a Form 22, which was stipulated into evidence as Exhibit 3.
6. The parties further stipulated into evidence plaintiff's weekly time cards as Exhibit 1.
7. A bound set of medical records was stipulated into evidence.
8. The parties agreed that the contested issues to be determined are:
 a. Did plaintiff suffer a compensable injury by accident by way of specific traumatic incident on 16 December 1996, while employed by defendant-employer?
 b. If plaintiff sustained a compensable injury, to what benefits, if any, is he entitled?
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 25 years old and employed by Montgomery Acoustical Contractors, Inc., a company that installs acoustical ceilings, drywall, metal studs, stucco and insulation. Plaintiff began working for Montgomery Acoustical in August 1996 as a sheetrock worker. The job required plaintiff to hang, fit and secure sheetrock onto walls of buildings.
2. Plaintiff quit his job at Montgomery Acoustical in November 1996. Plaintiff then immediately went to work for the CC Frame Shop in November 1996. At the Frame Shop, plaintiff built units for reclining chairs and performed a "spring up" job as well. Plaintiff only worked for the Frame Shop for two days.
3. Plaintiff telephoned Joe Warner, president of Montgomery Acoustical, and requested his old job. Mr. Warner accommodated plaintiff by rehiring him as a sheetrock worker effective on 10 December 1996 when Mr. Warner took plaintiff to a work location.
4. When Mr. Warner arrived at plaintiff's home on 10 December 1996, he observed plaintiff exiting from his house. Plaintiff was walking stiffly and complained of tightness in the chest, pain in the hip and pain shooting down one leg. Plaintiff also reported to Mr. Warner that he had pulled something while working at the Frame Shop. Plaintiff did not know exactly what he had done at the Frame Shop to cause pain, but he thought he had pulled a muscle. Plaintiff and Mr. Warner did not discuss the matter further. Plaintiff worked on 10 December 1996 without apparent difficulty.
5. Plaintiff did not work on Tuesday, 17 December 1996, but he did travel to Laurinburg on 18 December 1996. In Laurinburg, plaintiff worked with David Edwards, a foreman for defendant-employer who was also plaintiff's supervisor at a Papa John's Restaurant under construction in a shopping mall.
6. Plaintiff testified at the hearing before the Deputy Commissioner that he and David Edwards were hanging sheetrock when plaintiff twisted and felt a lot of pain in his back and right leg. Allegedly, plaintiff notified David Edwards immediately of this incident.
7. David Edwards denied that plaintiff was actively lifting any sheetrock in Laurinburg and denied that plaintiff either injured his back or complained of any back or leg pain. Although David Edwards was certain that plaintiff did not report an injury to his back on 20 December 1996, plaintiff recalls that he was in so much pain that he had to lie down on a seat the entire return trip from Laurinburg.
8. Defendant-employer's records demonstrate that plaintiff worked full eight-hour days on 10-13 December, 16 December and on 18-20 December 1996.
9. On Saturday, 21 December 1996, worked "off the clock" for Mr. Edwards, who was independently contracting for defendant-employer. Plaintiff only worked four hours that day.
12. Plaintiff only worked two days the following week, Monday, 23 December and Friday, 27 December 1996 due to the Christmas holiday.
13. In his written interrogatory responses, plaintiff indicated that the date of his alleged injury was 16 December 1996. Plaintiff also utilized the date of 16 December 1996 for the original Form 18 completed by plaintiff's counsel. The original Form 18 lists the location of the injury as Troy, Montgomery County, North Carolina. The Form 18 was later amended on 12 May 1997 to indicate that plaintiff's alleged injury occurred in Laurinburg, but the date of the injury remained 16 December 1996.
14. Plaintiff asserted that after returning home on the afternoon of 20 December 1996, he "laid on the couch all afternoon" to alleviate his back and leg pain. Contrary to the plaintiff's previous statement that he rested at home on the afternoon of 20 December 1996, he also indicated that on that same day that he laid in the back of a van driven by Mr. Edwards and did not get home until late.
15. David Edwards contradicted plaintiff's version of his alleged injury. First, he disputed the size of the sheetrock on which the two were working. According to Mr. Edwards, the sheetrock was 9 inch by 1/2 inch sheetrock. Furthermore, Mr. Edwards asserted that he performed most of the lifting of the sheetrock and that plaintiff only used a screw gun to screw in the sheetrock. Finally, Mr. Edwards disagreed that plaintiff lay in the back of the van as they left the project site on 20 December 1996.
16. By 2 January 1997, plaintiff had extreme low back and right leg pain and contacted Joe Warner requesting authorization for medical treatment.
17. Annette Warner, the person in charge of workers' compensation issues for defendant-employer, documented the incident at Papa John's in Laurinburg in her notes but refused to authorize treatment.
18. On 3 January 1997, plaintiff presented to the emergency room at Montgomery Memorial Hospital. He was referred to Dr. Jim Rice.
19. Mr. Warner recalls that plaintiff telephoned him to discuss his back condition on 13 January 1997. During that conversation, plaintiff inquired whether defendant-employer's insurance rates would go up if he filed a claim against the company for a back injury. Mr. Warner responded that the rates would probably increase, but reminded plaintiff that he had originally reported that the back injury occurred at the CC Frame Shop prior to 10 December 1996. At that point, according to Mr. Warner, plaintiff admitted that he was not sure where his injury occurred. Mr. Warner then reminded plaintiff that if plaintiff was injured while on the job with defendant-employer, Mr. Warner would have to file a claim with his workers' compensation insurance carrier which would undertake an investigation of the claim.
20. Warner did not complete an accident report or Form 19 on behalf of plaintiff because plaintiff was not sure how or where the alleged injury occurred.
21. Annette Warner had several conversations with plaintiff and his wife concerning his alleged injury. Mrs. Warner's recollection is that she first spoke with plaintiff regarding his alleged injury on 10 January 1997. At that time, plaintiff told her that his back was bothering him, but he did not know where or how the alleged injury occurred. During this conversation, according to Mrs. Warner, plaintiff never mentioned that he had sustained an injury at Papa John's located in Laurinburg on 20 December 1996 while working for defendant-employer.
22. Charles Lewis, who has known both plaintiff and the Warners for several years and lives in Troy, North Carolina, encountered plaintiff at a social gathering in late 1996. During their conversation, plaintiff described having problems with his back and hip. Mr. Lewis specifically recalled plaintiff telling him that he had hurt his back at the CC Frame Shop while doing "springing up" work. Furthermore, Mr. Lewis was on disability at the time of that conversation from a prior workplace injury, and plaintiff inquired about how to procure disability benefits.
23. Following the conversation, Mr. Lewis also observed plaintiff walking around town. He first observed plaintiff walking down by the railroad tracks without difficulty. Shortly thereafter, he observed plaintiff going into the Social Services office. At that point, according to Mr. Lewis, plaintiff's physical appearance changed significantly with plaintiff bending over and holding his back.
24. Plaintiff's medical records and history do not support his contentions of sustaining an injury to his back on 16 December or 20 December 1996 in Laurinburg while working for defendant-employer at the Papa John's location.
25. The initial Moore Regional Hospital Emergency Room reports of 3 January 1997 fail to show that plaintiff reported a back injury sustained on 20 December 1996 or another date while working for Montgomery Acoustical. The initial emergency room report states, "The patient works in drywall. He has been having some back pain for over 3 weeks, now radiating down the right leg into his ankle." No specific injury or traumatic event was reported by plaintiff in any of these reports.
26. Plaintiff next presented to Dr. James Rice, an orthopaedic surgeon in Southern Pines, North Carolina, on 15 January 1997. Plaintiff completed a new patient information sheet and indicated on the form that his back pain commenced on approximately December 13, 1996.
27. Treatment with Dr. Rice was not authorized so plaintiff returned to the Montgomery Memorial Hospital emergency room on 16 January 1997, continuing to complain of back pain. At that time, he reported to the emergency room physician that he injured his back at work on 16 December 1996, but only reported it until 2-3 weeks later when he started experiencing back pain and decided to go to the emergency room for treatment.
28. On 23 January 1997, plaintiff returned to the emergency room to report he was suffering from persistent low back pain beginning after lifting heavy sheetrock in mid-December.
29. Plaintiff also revisited the emergency room on 31 January 1997, reporting he injured his back lifting and twisting sheetrock.
30. The emergency room records directly contradict plaintiff's responses to interrogatories in which he reported that he notified David Edwards of the back injury and severe pain immediately after sustaining an injury on 20 December 1996. A further inconsistency in plaintiff's testimony is his statement in the medical history records of Dr. Rice where the date of injury is listed as 13 December 1996 while he loaded sheetrock on a dolly.
31. Plaintiff next went to work for Capel's, a company that winds yarn for braided rugs. James Dennis was plaintiff's supervisor during this time. Dennis observed plaintiff performing his job lifting 80-pound bags of yarn with no reports of pain or difficulties and no visual manifestations of pain or difficulties.
32. An affidavit of Doris Maddox, payroll clerk for Capel's, was submitted subsequent to the hearing before the Deputy Commissioner. Plaintiff worked for Capel's from 26 January 1998 through 24 February 1998. Plaintiff was then incarcerated at the Montgomery County Jail for driving with a revoked license and failing to have insurance. He was incarcerated through 4 April 1998.
33. Plaintiff returned to work for Capel's and stayed there until 16 April 1998. Plaintiff left his job in April 1998 and gave no reason to Mr. Dennis why he was leaving. He did not state that he was leaving because the job was physically too difficult for him.
34. At the time of the hearing before the Deputy Commissioner, plaintiff had been unable to find a job within his restrictions and had not worked since 16 April 1998. Plaintiff applied for unemployment benefits in 1998 but was denied.
35. In the instant case, plaintiff has failed to carry his burden of proving a compensable injury to his back on 16 December 1996 or 20 December 1996 arising out of and in the course of his employment with defendant-employer. Plaintiff's hearing testimony was not credible and was inconsistent with prior statements he gave in his interrogatory responses and to his medical providers. Plaintiff's testimony contradicted the testimony from representatives of defendant-employer who presented competent and credible testimony regarding this claim. Finally, a social acquaintance of plaintiff refuted his allegation that he injured his back while working for defendant-employer and instead confirmed that plaintiff had sustained a back injury while working for the CC Frame Shop prior to his employment with defendant-employer. The Full Commission declines to reverse the Deputy Commissioner's credibility determinations and finds that the plaintiff was not credible.
36. The testimony of Joe Warner, Annette Warner and David Edwards contradicted plaintiff's statements at the hearing before the Deputy Commissioner. The undersigned give greater weight to the combined testimony of these witnesses than to that of plaintiff.
37. The greater weight of the combined testimony of the Joe and Annette Warner, David Edwards and Charles Lewis supports a conclusion that plaintiff's back injury occurred before being rehired by the defendant-employer on 10 December 1996.
38. The overwhelming weight of the competent, credible evidence of record, consisting both of written medical records and the testimony of co-employees, supervisors, employers and social acquaintances, supports a conclusion that plaintiff did not sustain an injury by accident or by way of specific traumatic incident on 16 December 1996 or 20 December 1996 while working for defendant-employer.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of proving each and every element of compensability in this action. Harvey v. RaleighPolice Department, 96 N.C. App. 28, 384 S.E.2d 549, cert. denied,326 N.C. 706, 388 S.E.2d 454 (1989). Plaintiff must prove by the greater weight of credible evidence that he sustained an injury to his back on 16 December 1996 or 20 December 1996 arising out and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff failed to carry his burden of proving by the greater weight of credible evidence that he sustained an injury to his back on 16 December 1996 or 20 December 1996 arising out of and in the course of his employment with defendant-employer. Therefore, plaintiff is not entitled to any compensation or medical benefits under the terms and provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is and hereby must be DENIED.
2. Each side shall pay its own costs.
This the ___ day of July 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
LKM/jth