LYNN M. HARVEY, WIDOW AND ADMINISTRATRIX OF THE ESTATE OF MICHAEL E. WICHMANN, DECEASED, EMPLOYEE, PLAINTIFF v. RALEIGH POLICE DEPARTMENT, CITY OF RALEIGH, EMPLOYER, SELF-INSURED, DEFENDANT

No. 8810IC1050

(Filed 17 October 1989)

1. **Master and Servant § 68 (NCI3d) — workers' compensation — suicide of police officer — depression — not an occupational disease**

In a workers' compensation action arising from the suicide of a police officer, the Industrial Commission did not err by finding that, despite plaintiff's expert testimony to the contrary, the preponderance of the evidence establishes that factors other than the deceased employee's occupation produced the dysthymic disorder (depression) and his ultimate death. It does not appear from a review of the record that the Commission ignored or disregarded plaintiff's doctor's testimony, and there was evidence in the record which would support the finding of fact which differed from the opinion given by plaintiff's doctor. The Industrial Commission is not limited to the consideration of expert medical testimony in cases involving complex medical issues.

**Am Jur 2d, Workmen's Compensation §§ 106, 240-243, 310.**

2. **Master and Servant § 67 (NCI3d) — workers' compensation — suicide of police officer — depression — no increased risk from occupation**

The Industrial Commission did not err by finding that a deceased officer was not at an increased risk, as compared to members of the general public, of developing depression by virtue of his job where there was testimony supporting the Commission's findings. Furthermore, the finding that the

deceased officer's employment did not significantly contribute
to or become a significant cause or factor in the development
of the depression was a clear finding that plaintiff failed to
prove causation.

**Am Jur 2d, Workmen's Compensation §§ 106, 240-243, 310.**

APPEAL by plaintiff from the North Carolina Industrial Com-
mission. Opinion and Award entered 6 July 1988. Heard in the
Court of Appeals 14 April 1989.

*Michaels and Jones, P.A., by Gregory M. Martin, for plaintiff
appellant.*

*Dawn S. Bryant for defendant appellee.*

COZORT, Judge.

Plaintiff's decedent, Michael E. Wichmann, was a police officer
employed with the defendant, Raleigh Police Department. Officer
Wichmann committed suicide on 1 June 1982. Plaintiff filed for
benefits under the Workers' Compensation Act, alleging that her
husband suffered from dysthymic disorder, depression, which
resulted in his committing suicide. The Commission found that
Officer Wichmann suffered from dysthymic disorder. However, the
Commission also found that Officer Wichmann was not at an in-
creased risk, as compared to members of the general public, of
developing this condition by virtue of his job as a law enforcement
officer. The Commission further found that Officer Wichmann's
employment as a law enforcement officer did not significantly con-
tribute to, nor was a significant causal factor in, the development
of Officer Wichmann's depression. Plaintiff appeals. We affirm.

The primary issues to be considered in this appeal are: (1)
whether the Commission improperly disregarded expert testimony
on the nature and genesis of Officer Wichmann's depression; (2)
whether the Commission erred in finding that Officer Wichmann
was not at an increased risk of developing depression by virtue
of his job as a law enforcement officer; and (3) whether the Commis-
sion erred in finding that Officer Wichmann's employment as a
law enforcement officer did not significantly contribute to his
depression.

Wichmann was employed with the Raleigh Police Department
on 6 February 1978. His initial training period progressed smooth-

ly until he was injured in an accident. After an absence of several months, Wichmann returned to work; however, he encountered difficulties in job performance. Several supervisors recommended that Officer Wichmann's employment as a police officer be terminated. The Chief of Police, Frederick K. Heineman, decided to retain Officer Wichmann, and after Officer Wichmann was transferred, his work performance improved.

In 1982, Officer Wichmann began working part time as a security officer for K-Mart, while keeping his full-time employment with the Raleigh Police Department. On 19 May 1982, Officer Wichmann was notified that he was being put on administrative leave because of an internal affairs investigation on an allegation that Wichmann had stolen a candy bar from a convenience store. On 28 May 1982, Wichmann was informed that he could not work off duty while on administrative leave. Also in May, Wichmann was notified by K-Mart that he had been named in a lawsuit against K-Mart and Wichmann for false arrest.

On the night of 31 May 1982, Wichmann left his home at about 11:30 p.m. after having had an argument with his wife. When he had not returned the next morning, his wife called the Raleigh Police Department and learned he did not report for work. Wichmann's wife went out looking for him and found his truck parked in a field about 500 feet from their house. One end of a garden hose had been attached to the exhaust pipe, and the other end had been taped in the window of the truck. Wichmann died of asphyxiation due to carbon monoxide inhalation.

Plaintiff filed a claim for benefits under N.C. Gen. Stat. § 97-38, alleging that Wichmann suffered from an occupational disease due to his employment by the Raleigh Police Department and that this compensable occupational disease resulted in his death. The defendant, Raleigh Police Department, denied plaintiff's claim, and the matter was scheduled for hearing before a Deputy Commissioner of the North Carolina Industrial Commission. The case came on for hearing on 30 November 1984, with additional testimony being received in 1985. On 18 October 1985, Deputy Commissioner Angela R. Bryant filed an Opinion and Award finding that Wichmann's suicide was directly caused by depression which was an occupational disease. Defendant appealed to the Full Commission. In an Opinion and Award filed 22 May 1986, the Full Commission vacated and set aside a portion of the Deputy Commissioner's

HARVEY v. RALEIGH POLICE DEPT.

[96 N.C. App. 28 (1989)]

Opinion and Award, holding that Wichmann's death was not due to a compensable occupational disease. Plaintiff filed notice of appeal to the North Carolina Court of Appeals. In an opinion filed 5 May 1987, this Court reversed the main portion of the Industrial Commission's Opinion and Award and remanded the case to the Commission for further consideration. *Harvey v. Raleigh Police Department*, 85 N.C. App. 540, 355 S.E.2d 147, *disc. rev. denied*, 320 N.C. 631, 360 S.E.2d 86 (1987). This Court held that the Commission's conclusions of law were not supported by findings of fact. This Court also held that the Commission appeared to have ignored testimony by Dr. Bruce L. Danto, an expert in psychiatry who had performed a "psychological autopsy" on Wichmann. The Court held Dr. Danto's testimony would assist the Commission in determining whether Wichmann had a dysthymic disorder and directed the Commission to consider his testimony on remand.

The case came on for hearing a second time before the Full Commission on 24 May 1988. In an opinion filed 6 July 1988, the Commission adopted the Opinion and Award filed 22 May 1986 with the following modifications:

FINDINGS OF FACT

35. The deceased employee suffered from a dysthymic disorder (depression) at the time of his death. However, the deceased employee was not at an increased risk, as compared to members of the general public, of developing this condition by virtue of his job as a law enforcement officer. Further, his employment as a law enforcement officer did not significantly contribute to, nor was a significant causal factor in, the disorder's development, nor did the deceased employee's occupation aggravate or accelerate the disorder.

36. While the testimony of Bruce L. Danto, M.D. is certainly credible, competent and properly admitted into evidence, the preponderance of the evidence establishes that factors other than the deceased employee's occupation produced the dysthymic disorder and his ultimate death.

37. The deceased employee was not mentally deranged and deprived of normal judgment as a result of his employment.

In all other respects the Industrial Commission Opinion and Award filed 22 May 1986 through the *Award* section stands as written.

[1] Plaintiff first contends that the Commission improperly disregarded the expert testimony of Dr. Danto. In support of that argument the plaintiff further contends that, since there was no expert medical testimony to rebut Dr. Danto's testimony, the Commission erred in finding to the contrary. Citing Click v. Pilot Freight, 300 N.C. 164, 265 S.E.2d 389 (1980), plaintiff argues that there must be medical testimony to support Finding of Fact No. 36, which is quoted above. The plaintiff argues that Click requires expert medical testimony to support findings by the Commission in cases of this nature.

We disagree with plaintiff's analysis for several reasons. First, our review of the record does not lead us to the conclusion that the Commission ignored or disregarded Dr. Danto's testimony. Dr. Danto was tendered by the plaintiff as an expert in psychiatry, suicidology and police stress. Dr. Danto performed a "psychological autopsy" on the decedent, a process involving interviewing family members and reviewing records of the deceased. The purpose is to determine the probable cause of death or the person's state of mind at the time of his death. Dr. Danto testified that his psychological autopsy of Officer Wichmann led him to the opinion that Wichmann suffered from depression, that his employment significantly contributed to the depression, and that the depression was the direct cause of his suicide. Dr. Danto also testified as to the amount and type of stress police officers are exposed to as compared to members of the general public. In its findings of fact, the Commission found that Officer Wichmann suffered from depression at the time of his death. This finding appears to be based directly upon Dr. Danto's testimony. Therefore, it does not appear that the Commission disregarded or ignored Dr. Danto's testimony.

Furthermore, there was evidence in the record which would support the finding of fact which differed with the opinion given by Dr. Danto. Dr. John McCall was submitted as an expert witness for the defendant. Dr. McCall administered a battery of psychological tests to Wichmann in 1978 prior to his employment with the defendant. He had also conducted a class in which Officer Wichmann was a member and had reviewed the files since Officer Wichmann's suicide. Dr. McCall testified that psychological autopsies are not accepted procedures in the field of clinical psychology. His testimony cast doubt on the reliability of forming an opinion about the cause of a psychological problem when the psychologist had never had

HARVEY v. RALEIGH POLICE DEPT.

[96 N.C. App. 28 (1989)]

any contact with the person being diagnosed. Dr. McCall also testified that there were many factors which contributed to Officer Wichmann's suicide:

> I believe he had so many stresses on him and all of them contributed.

> * * * *

> To me, there were many, many stresses in this poor man's life and I don't know which one killed him and only God does. And, I think anybody that says they can rule out—anybody who says no other stressor had anything to do with it—it was only the fact that this or that that—I just think that that just flies in the face of reason.

> * * * *

> I believe that the poor man was overwhelmed with all kinds of problems, which contributed to his final suicide, but again, this is, you know, you people are the ones who know the facts. I was fortunate to sit in the courtroom to hear the testimony that first day, and that helped me to understand more than I did before. And I would say yes, I see that he had unbelievable problems to cope with. A variety of things.

> * * * *

> . . . There are a multiple variety of things that could have made it difficult. But again, why did he ultimately perform this act, suicide, is a mystery, and police suicides are common enough, but not the most suicides are in police work. Dentists commit suicide more than police. Psychiatrists do. And so, it's so difficult to know why they do it.

There was also evidence from Officer Wichmann's associates that he enjoyed his work and that the primary contributors to stress came from his home environment and financial difficulties. First, Officer Sam Murray, who worked an adjoining beat with Officer Wichmann and considered him the closest friend he had on the police force, testified that Officer Wichmann acted as if he was "in a safe harbor at work." There was evidence that Officer Wichmann had some problems in his first year on the force. One, his supervisors said that a lack of confidence was his biggest problem. But the evidence is clear that Officer Wichmann's performance

improved in 1979 and continued to improve, leading up to a promotion in August 1981.

Also, Wichmann was being sued for actions he took as a security officer for K-Mart, his off-duty employer. He was under investigation for allegedly shoplifting at a convenience store. He had financial difficulties and, according to Officer Murray, many times did not have enough money to buy a meal or to put gas in his car, even though he worked two jobs. Wichmann's wife, plaintiff herein, handled the couple's finances. She and Officer Wichmann fought, both verbally and physically. On the Friday before he committed suicide, Officer Wichmann told his supervisor at K-Mart that he was extremely apprehensive about going home, apparently because he thought he would have to quit his off-duty job while he was under investigation for shoplifting. This testimony was in contradiction to testimony from Wichmann's wife that the stress on Officer Wichmann was coming from his work as a policeman.

Thus, we find there is sufficient evidence to support the Commission's finding that Officer Wichmann's employment did not significantly contribute to and was not a significant cause or factor in the depression which apparently led to his suicide. If the Commission's findings are supported by competent evidence, they are conclusive on appeal even though there is evidence that would have supported findings to the contrary. *Gaines v. L. D. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977). Moreover, we do not read *Click* to require that the Industrial Commission must find in accordance with plaintiff's expert medical testimony if the defendant does not offer expert medical testimony to the contrary. In *Click,* our Supreme Court held:

> [W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, *only an expert can give competent opinion evidence as to the cause of the injury.*

300 N.C. at 167, 265 S.E.2d at 391 (citation omitted) (emphasis added).

We read *Click* as an evidentiary ruling on the admissibility of opinion testimony as to the cause of an injury involving complicated medical questions, and not as instructions for the Industrial Commission on having to find in accordance with expert medical testimony. Decisions handed down by the Supreme Court since

**HARVEY v. RALEIGH POLICE DEPT.**

[96 N.C. App. 28 (1989)]

*Click* support this analysis. For example, in *Rutledge v. Cultex Corp.*, 308 N.C. 85, 301 S.E.2d 359 (1983), the court stated:

> In determining whether a claimant's exposure to cotton dust has significantly contributed to, or been a significant causative factor in, chronic obstructive lung disease, *the Commission may, of course, consider medical testimony, but its consideration is not limited to such testimony.* It may consider other factual circumstances in the case, among which are (1) the extent of the worker's exposure to cotton dust during employment, (2) the extent of other non-work-related, but contributing, exposures and components; and (3) the manner in which the disease developed with reference to the claimant's work history. *See Booker v. Duke Medical Center, supra*, 297 N.C. at 476, 256 S.E.2d at 200.

*Id.* at 105, 301 S.E.2d at 372 (emphasis added).

We read *Rutledge* as a clear statement from the Supreme Court that the Industrial Commission is not limited to the consideration of expert medical testimony in cases involving complex medical issues. We find no merit to the plaintiff's contentions to the contrary.

[2] We next consider plaintiff's argument that the Commission erred in finding that Officer Wichmann was not at an increased risk, as compared with the members of the general public, of developing depression by virtue of his job as a law enforcement officer. We find no merit to this argument. First, Dr. McCall's testimony supports the Commission's findings. Furthermore, even if we were to concur with plaintiff's argument that the evidence was insufficient to support such a finding, the Commission's finding that Officer Wichmann's employment did not significantly contribute to or become a significant cause or factor in the development of the depression, was a clear finding that the plaintiff failed to prove causation. The burden of proving each and every element of compensability is upon the plaintiff. *Moore v. J. P. Stevens & Co.*, 47 N.C. App. 744, 269 S.E.2d 159 (1980). By the Commission's findings, it is evident that the Commission was of the opinion that plaintiff failed to prove that job stress was a significant cause of the depression which led to Officer Wichmann's suicide.

For the reasons stated above, the opinion and award of the Industrial Commission is

Affirmed.

Judges PHILLIPS and PARKER concur.