***********
The undersigned have reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
 ***********
At the deputy commissioner hearing, the parties submitted a pre-trial agreement and entered into the following stipulations:
Plaintiff-employee is Olivia Van.
Defendant-employer is Family Dollar Stores, Inc.
The alleged date of injury is June 30, 1998.
The carrier for defendant-employer on the alleged date of injury is Travelers Insurance Company.
The parties agree that the North Carolina Industrial Commission has jurisdiction over the subject matter and the parties to this claim.
Plaintiff alleges an injury by accident, or specific traumatic event, on June 30, 1998 that resulted in an injury to her back. Defendants initially accepted plaintiff's claim on a Form 63, payment without prejudice, while they investigated the claim. Subsequently, defendants filed a Form 61 and denied plaintiff's claim.
The issues are:
 Whether plaintiff suffered from a compensable injury by accident or specific traumatic incident?
If so, what benefits is plaintiff entitled to recover?
 Whether plaintiff is entitled to attorney's fees for unreasonable refusal of benefits?
 Whether plaintiff unjustifiably refused to return to work in accordance with § 97-32? And,
Whether plaintiff's treatment is related to the compensable injury?
8. The parties stipulated that plaintiff's wage rate, and compensation rate, would be determined by a Form 22 which was to be submitted by defendant, however, if no Form 22 is filed the average weekly wage would be $125.00.
9. The Deputy Commissioner received into evidence 53 pages of medical records, which were marked as Stipulated Exhibit 2.
 ***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. Employee-Plaintiff began working as a part-time employee for Employer-Defendant in January of 1998. Prior to that time, Employee-Plaintiff had not been employed for more than one year, in part due to a pregnancy. Employee-Plaintiff contends that on June 30, 1998, she sustained a compensable workers' compensation injury to her back while working for Employer-Defendant. On that date, Employee-Plaintiff was unloading some chairs when she felt pain in her back.
2. Defendants began payment of workers' compensation benefits to Employee-Plaintiff without prejudice through the filing of an Industrial Commission Form 63. As a result, Employee-Plaintiff received temporary total disability benefits from July 4, 1998, through September 9, 1998. Thereafter, Defendants denied Employee-Plaintiff's claim by filing an Industrial Commission Form 61 and no additional benefits were paid to Employee-Plaintiff.
3. On July 4, 1998, Employee-Plaintiff sought medical treatment at the Pender Memorial Hospital Emergency Department. Employee-Plaintiff alleged that she had experienced the onset of back pain two days prior after pulling a heavy cart at work. Employee-Plaintiff was physically examined and diagnosed with back soreness/spasm. Employee-Plaintiff was treated and instructed to return to work at light duty for the next three days.
4. Employee-Plaintiff returned to Pender Memorial Hospital on July 8, 1998. At that time, Employee-Plaintiff indicated that her back problems had begun after pulling chairs at work. An x-ray of Employee-Plaintiff's lumbar spine was taken and interpreted as negative. Employee-Plaintiff was diagnosed with a lumbar strain and was instructed to remain out of work until July 11, 1998.
5. On July 15, 1998, Employee-Plaintiff sought treatment at Burgaw Medical Center and was seen by Dr. Singh. Employee-Plaintiff described back pain that began after lifting a stack of chairs. Employee-Plaintiff was diagnosed with a lumbar strain and was instructed to return to work with light duty restrictions. On July 23, 1998, Employee-Plaintiff was seen again by Dr. Singh, who referred her to an orthopedist for further evaluation and treatment.
6. On July 30, 1998, Employee-Plaintiff was seen by Dr. Nance at Wilmington Orthopedic Group. Dr. Nance reviewed her medical history and performed a detailed physical examination. Dr. Nance diagnosed Employee-Plaintiff with lumbar strain and assigned physical therapy. In addition, Dr. Nance stated that Employee-Plaintiff should remain out of work until August 10, 1998, but that she could return to work without restrictions at that time.
7. Employee-Plaintiff was seen in follow-up by Dr. Nance on August 12, 1998. Dr. Nance noted that Employee-Plaintiff came in "without having returned to work at the time we expected." Dr. Nance stated that Employee-Plaintiff could return to work without restrictions on August 17, 1998. On August 15, 1998, Employee-Plaintiff returned to Pender Memorial Hospital. Employee-Plaintiff was again diagnosed with back spasm and instructed to remain out of work for two days.
8. On August 20, 1998, Employee-Plaintiff was seen again by Dr. Nance. Dr. Nance stated that he was "at a loss to explain" Employee-Plaintiff's symptom complex. In addition, Dr. Nance stated that he did not think further physical therapy, bracing or orthopedic diagnostic studies were in order for Employee-Plaintiff. Dr. Nance instructed Employee-Plaintiff to remain out of work until September 8, 1998, or until she was seen for a second opinion.
9. On September 2, 1998, Employee-Plaintiff was seen for a second opinion by Dr. Rodger of Coastal Orthopedics. Dr. Rodger performed a physical examination and found evidence of multiple psychogenic features. Specifically, Dr. Rodger performed straight leg tests on Employee-Plaintiff where she complained of terrible pain during one trial, but complained of no pain when distracted by Dr. Rodger during another trial of the very same test. Dr. Rodger also found that Employee-Plaintiff had no obvious neurological findings in reflexes or strength in the lower extremities or the upper extremities.
10. X-rays were taken of Employee-Plaintiff's lumbar, cervical and thoracic spine and all of these x-rays showed no evidence of instability, deformity or obvious destructive lesions. Dr. Rodger stated that Employee-Plaintiff's consolation of symptoms was "bizarre and nonatomic with some psychogenic features," suggestive of significant psychogenic overlay. Dr. Rodger also stated that many of Employee-Plaintiff's symptoms were not related to her lifting injury and that he had no treatment for her condition. On September 8, 1998, Dr. Rodger indicated that Employee-Plaintiff would best be treated by returning to work and that she should not continue to stay out of work.
11. After being released to return to light duty work, Employee-Plaintiff did not return to work, even though work was available within her restrictions. In fact, Matthew Jones, Employee-Plaintiff's supervisor, testified at the hearing that light duty work was always available for Employee-Plaintiff with Employer-Defendant. Furthermore, even when both Dr. Nance and Dr. Rodger released her to return to work without restrictions, Employee-Plaintiff chose to remain out of work.
12. Employee-Plaintiff did not seek medical treatment again for her back until seventeen months after being seen by Dr. Rodger. During the hearing, Employee-Plaintiff testified that she was pregnant and delivered her second child during this period of time (in 1999). In addition, Employee-Plaintiff moved to Virginia Beach, Virginia in October of 1999.
13. On February 16, 2000, Employee-Plaintiff was seen by Dr. Albert Dickson, who noted that Employee-Plaintiff had a ten-year history of chronic low back pain. Dr. Dickson ordered a MRI scan of Employee-Plaintiff's lumbar spine, which was performed on February 17, 2000, and revealed degenerative disc disease at L4/5 and L5/S1, as well as disc herniations at L4/5 and L5/S1. During his deposition, Dr. Dickson could not state that Employee-Plaintiff's herniated discs were related to her alleged work-related injury on June 30, 1998.
14. Employee-Plaintiff was seen by Dr. Ordonez some two years after the original injury. Although he gave an opinion regarding possible causation, his opinion is given little weight when compared to the doctors who saw and treated Employee-Plaintiff initially and closer in time to the date of the alleged injury.
 ***********
Based on the foregoing Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The burden of proving each and every element of compensability is upon Employee-Plaintiff. Harvey v. Raleigh Police Dept., 96 N.C. App. 28,384 S.E.2d 549 (1989).
2. Although Employee-Plaintiff has established an injury by accident pursuant to Section 97-2(6), she must prove that she has been disabled since September 9, 1998, and that she is entitled to additional disability benefits. To establish disability a claimant must prove: (1) she was incapable of earning the same wages in the same employment; (2) she was incapable of earning the same wages in any other employment; and (3) her incapacity to earn was caused by the injury. Arrington v. TexfiIndus., 123 N.C. App. 476, 473 S.E.2d 403 (1996).
3. In order to prove disability under the Arrington test, a claimant must meet all three parts of the test. However, Employee-Plaintiff failed to satisfy any of the requirements of the Arrington test. Employee-Plaintiff offered no evidence to prove that she was incapable of earning wages, as the testimony at hearing from Matthew Jones indicated that a job was always available for Employee-Plaintiff. Furthermore, Employee-Plaintiff offered no credible evidence to demonstrate that she had sought other employment or that she was incapable of earning wages in any other employment. The competent evidence of record clearly indicates that Employee-Plaintiff has been capable of earning wages since September 9, 1998, and therefore, Employee-Plaintiff is ineligible to receive any additional temporary disability benefits.
4. Furthermore, the Workers' Compensation Act dictates that if a claimant refuses suitable employment, she is not entitled to payment of any workers' compensation benefits. N.C.G.S. § 97-32. All of the credible evidence of record indicates that a job always remained available for Employee-Plaintiff with Employer-Defendant, even when Employee-Plaintiff was restricted to light duty, but that Employee-Plaintiff unjustifiably refused to return to work.
5. Within just over two months after her alleged injury, all of Employee-Plaintiff's treating medical providers had released her to return to work without restrictions. Furthermore, none of these providers indicated that Employee-Plaintiff had any permanent back problems or that Employee-Plaintiff would require additional medical treatment for her back. In fact, there is no objective evidence of any injury to Employee-Plaintiff's back until her MRI scan in February 2000.
6. The competent medical evidence fails to establish that the positive findings from her MRI scan are the result of her work-related injury. Dr. Singh and Dr. Nance failed to find evidence of a herniated disc. Further, Dr. Dickson did not relate the MRI findings to the work-related injury. Dr. Ordonez concluded that it was more probable than not that the herniation was related, however, his opinion is given no weight because he did not see plaintiff near the time of her initial injury and his opinion appears to be based on speculation, rather than competent medical evidence. See Smith v. Beasley Enterprises, ___ N.C. App. ___,577 S.E.2d 902 (2002). Employee-Plaintiff has failed to prove that her herniated discs or her need for medical treatment for her back is due to her work-related injury. Therefore, she is not entitled to any additional medical benefits.
7. Defendants accepted plaintiff's claim, pursuant to a Form-63, without prejudice and without admitting liability until September 9, 1998, when it filed for denial of plaintiff's claim. Pursuant to §97-18(d), defendants are responsible for plaintiff's medical treatment prior to the denial of the claim. N.C.G.S. § 97-25.
 ***********
Based on the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Employee-Plaintiff's claim for additional benefits is hereby DENIED.
2. Defendants shall pay for plaintiff's medical treatment that was provided by or at their direction and incurred before September 9, 1998.
Each side shall pay its own costs.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER