***********
Based upon review of all of the competent evidence of record with reference to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS, with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 STIPULATIONS
1. On December 1, 1999, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employee-employer relationship existed between the employee and the defendant-employer on the day of the injury by accident.
3. Key Risk Insurance Company was the carrier on the risk at all relevant times.
4. The employee's average weekly wage at the time of her alleged injury by accident was $521.98.
5. The issue before the Commission is whether plaintiff suffered an injury by accident on May 17, 2000 and if so, to what compensation is she entitled.
 ***********
Based upon all the competent evidence, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the Deputy Commissioner hearing, plaintiff was thirty nine years old and a high school graduate. Plaintiff was hired as a machine operator at Blue Ridge Metals on April 13, 1998.
2. Plaintiff testified that three days prior to May 17, 2000, she slipped in oil on the floor in her workplace and fell. She stated that when she fell, she had moderate back pain that never went away and that she continued to work even though the pain was keeping her awake at night.
3. Plaintiff did not file a claim with the Industrial Commission for her slip and fall incident occurring in the days prior to May 17, 2000.
4. At the hearing before the Deputy Commissioner, plaintiff testified that she injured her back on May 17, 2000, when she lifted a box of finished automobile parts and bent over to put the box on a pallet. She stated that when she tried to straighten her back, it was too painful.
5. On May 17, 2000, plaintiff was treated at the Park Ridge Hospital Emergency Room for complaints of back pain. Plaintiff stated at the hearing before the Deputy Commissioner that she told the emergency room nurses that she was injured when bending to lift a box at work. The emergency room records from plaintiff's May 17, 2000 visit reflect that plaintiff's pain began a few days ago and contain no mention of a lifting incident. The records list several other potential causes, including lifting while moving on May 13, 2000 and slipping and falling at work on May 12, 2000.
6. Several days later, plaintiff was seen by Dr. Joseph M. Dement, who had treated plaintiff since 1989 for back pain and other orthopedic problems. The records from Dr. Dement reflect only that plaintiff left work early on May 17, 2000 because of back pain. However, there is no mention in any of the medical records that plaintiff injured her back at work on May 17, 2000 while lifting boxes. On May 24, 2000, Dr. Dement performed an MRI and wrote plaintiff out of work for approximately one week, at which time she returned to work at light duty. Thereafter, plaintiff was able to return to her machine operator position at full duty.
7. Between May 2000 and July 2001, plaintiff underwent two surgeries to her left knee. Tracy Cannon, Human Resources Administrator for defendant-employer, testified that plaintiff missed no time from work for her back condition after plaintiff returned to work in late May 2000.
8. On June 15, 2001, plaintiff reported to Sisters of Mercy Urgent Care with reports of back pain. After this visit, plaintiff was referred to Dr. Greg Motley, an orthopedist with Southeastern Sports Medicine Center. Dr. Motley took plaintiff out of work for her back pain complaints as of July 27, 2001.
9. On July 18, 2001, plaintiff filled out a short-term disability application. Plaintiff received 26 weeks of short-term disability through January 31, 2002, at a compensation rate of $342.72 per week. On this short-term disability application, plaintiff stated that her claim was not related to her work and that she did not intend to file a workers' compensation claim. She noted that her back problem was genetic or hereditary and mentioned that the date that her symptoms first appeared was June 13, 1999.
10. In addition, when Dr. Motley completed the physician section of plaintiff's short term disability application form on July 26, 2001, he noted that plaintiff's back problem was not due to an injury arising out of her employment. Further, Ms. Cannon testified that she had discussions with plaintiff while plaintiff completed the short-term disability application and that plaintiff stated that she was not sure how her back problem began.
11. Dr. Motley referred plaintiff to Dr. Andrew Rudins on September 4, 2001 for evaluation of chronic thoracolumbar and left leg pain. Dr. Rudins testified that plaintiff's back condition was probably a discogenic type of pain. Dr. Rudins diagnosed plaintiff with chronic low back pain with mild degenerative disc disease and variable left radicular symptoms.
12. On October 23, 2001, plaintiff reported to Dr. Rudins a flare-up of her back pain due to moving two weeks earlier.
13. Another significant flare-up of plaintiff's back pain occurred prior to her August 5, 2002, visit with Dr. Rudins. A discogram was performed on August 19, 2002 and discography revealed the L4-5 disc and L5-S1 disc was the cause of plaintiff's back and leg pain.
14. Dr. Keith M. Maxwell performed a two level lumbar fusion on plaintiff on September 23, 2002.
15. Plaintiff's medical history reflected that she had experienced back problems since 1986 and that she has received treatment from Dr. Dement for back pain since at least 1989. Plaintiff's back problems required MRIs in 1992 and 1994. However, at the hearing before the Deputy Commissioner, plaintiff denied ever having back problems prior to May 2000.
16. Plaintiff admitted in her discovery responses that she had experienced back pain for two and a half weeks before the alleged work incident.
17. Clarence Smith, a machine operator who worked with plaintiff every day, testified that plaintiff complained of back and knee pain prior to May 2000 and that she continued to complain of knee and back pain after May 2000. Mr. Smith further stated that defendant's procedure requires an employee who is injured on the job to report the injury to his or her supervisor.
18. Plaintiff admitted that she never filled out an accident report and in her recorded statement stated that she never filled out paperwork, never heard anything else about it and admitted that she "sorta let it drop." However, plaintiff claims that she told Tommy Trull, her immediate supervisor at defendant-employer, about her work restrictions and gave him a doctor's note.
19. Plaintiff has not worked since July 11, 2001 and admitted at the hearing before Deputy Commissioner Garner that she has not looked for work.
20. The Full Commission finds that plaintiff's testimony that she sustained an injury to her back at work on May 17, 2000 is not credible, based upon the many inconsistencies between plaintiff's testimony and the testimony of her co-workers, as well as the numerous discrepancies between plaintiff's testimony, the medical records, and medical expert testimony.
21. After May 17, 2000, plaintiff's medical treatment was provided by Dr. Dement, Dr. Motley, Dr. Rudins and Dr. Maxwell. Dr. Dement testified that he was not able to give an opinion to a reasonable degree of medical certainty that plaintiff's back condition was related to any work injury. Dr. Motley did not testify but indicated on plaintiff's short-term disability application that her condition was not work-related. Dr. Rudins stated his opinion that plaintiff's condition requiring fusion surgery was related to her work accident. Dr. Maxwell gave no opinion regarding causation.
22. After careful review, the Full Commission gives greater weight to the expert testimony of Dr. Dement, and finds that plaintiff's back condition leading to her lumbar fusion surgery is not causally related to any work incident. Dr. Dement was in the best position to comment on plaintiff's back condition before and after May 2000 because he specifically examined plaintiff for this condition in 1992, 1994 and in 2000. Dr. Rudins did not examine plaintiff prior to September 2001 and was unaware of her long history of back problems. Further, Dr. Rudins did not review the May 2000 lumbar MRI exam, which revealed no pathology tending to support a need for an L4-5 fusion surgery.
23. Based upon the credible evidence of record, the Full Commission finds that plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on May 17, 2000.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain a compensable injury by accident arising out of and in course of her employment on May 17, 2000. N.C. Gen. Stat. § 97-2(6); Harvey v. Raleigh Police Dep't, 96 N.C. App. 28,384 S.E.2d 549, disc. rev. denied, 325 N.C. 706, 388 S.E.2d 454 (1989).
2. Plaintiff's claim for a slip and fall at work in the days prior to May 17, 2000, is time-barred under N.C. Gen. Stat. § 97-24(a).
3. Therefore, plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the law must be and hereby is DENIED.
2. Each side shall bear its own costs.
This the 7th day of October 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd