***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of Deputy Commissioner Donovan.
 *********** STIPULATIONS
1. The date of the alleged incident giving rise to this claim is August 12, 2009.
2. At the time of the alleged incident giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
3. At such time, an employment relationship existed between Plaintiff and Defendant-Employer.
4. At such time, Defendant-Employer employed three or more employees.
5. At all times relevant to this claim The Phoenix Insurance Company was the carrier on the risk for Defendant-Employer.
6. Plaintiff's average weekly wage in relation to this claim is $1,366.07, and the maximum compensation rate for 2009 is $816.00.
7. Plaintiff last worked for Defendant-Employer on August 12, 2009, and has obtained employment with a new employer earning the same or similar wages as of November 9, 2009.
 ***********
Based upon all of the evidence of record of this matter, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 53 years of age, and worked as a medical doctor in her native country of Azerbaijan until she immigrated to the United States in 1993. Since moving to the United States, Plaintiff has continued to work in the field of medicine and has been licensed as a physicians' assistant. Plaintiff began working as a physicians' assistant for Defendant-Employer in January 2002.
2. Plaintiff has a pre-existing back condition that dates back to at least 1993. The history of treatment for the condition includes a laminectomy and diskectomy in 2000, a flair up of symptoms in 2003 which required that an MRI be obtained, an increase of symptoms in 2005 that resulted in an epidural steroid injection, and Plaintiff being written out of jury duty by her *Page 3 
treating physician in 2007 "due to her medical condition [of] lumbar spondylosis and lumbar stenosis."
3. On Wednesday, August 12, 2009, Plaintiff spent the morning working for Defendant-Employer at Moses Cone Medical Center and then travelled to Wesley Long Hospital in the afternoon to provide care for a single patient.
4. Laura Ingold was also an employee of Defendant-Employer on August 12, 2009, working at Moses Cone Medical Center with Plaintiff.
5. At 8:22 p.m. on August 12, 2009, Plaintiff sent an e-mail to her supervisor Todd Pittman which stated she had hurt her back while working at Wesley Long. At 11:04 p.m. Plaintiff sent Mr. Pittman another e-mail saying that she had spoken to her neurosurgeon and was going to see him the next morning and that she would not be able to make it to work.
6. Plaintiff was written out of work by Dr. Joseph Stern from August 13, 2009 until August 27, 2009, with a note that Plaintiff was headed to a CME (continuing medical education) conference the next week.
7. Plaintiff notified Mr. Pittman of being written out of work via e-mail on August 13, 2009.
8. On August 27, 2009, Plaintiff filed an Industrial Commission Form 18 with the Industrial Commission pro se, alleging she sustained an injury to her back on the morning of August 12, 2009, while adjusting a patient.
9. On September 3, 2009, Plaintiff gave the Defendant-Carrier a recorded statement in which she claimed she had sustained her injury in two separate incidents while working at Moses Cone on the morning of August 12, 2009. Plaintiff also stated that prior to leaving for Wesley Long after lunch, she felt increased back pain, which continued on her drive to Wesley *Page 4 
Long and while she was working at the hospital that afternoon, resulting in some of the employees at the hospital asking if she was okay.
10. Plaintiff testified that she initially injured herself in the morning on the day in question, but added that a final incident causing low back pain occurred in the afternoon of August 12, 2009, while at Wesley Long. This was not mentioned in her recorded statement.
11. Plaintiff claimed that she informed Ms. Ingold she was having lower back pain while at lunch on the day in question. Plaintiff also claimed she told Ms. Ingold about her low back pain during a phone call while she was at an eye doctor appointment that afternoon, after she left Wesley Long. In the call, Plaintiff requested Ms. Ingold ask a physician on call to write her a prescription for a muscle relaxer.
12. Laura Ingold provided a recorded statement to the Carrier in October 2009 and testified at the hearing before the Deputy Commissioner. Ms. Ingold's recollection is consistent in both accounts, which contradict Plaintiff's account in several ways. Ms. Ingold agrees she and Plaintiff worked and had lunch together at Moses Cone Hospital on August 12, 2009, but she denies Plaintiff reported a work injury or lower back pain during lunch. Ms. Ingold recalled Plaintiff often complained of headaches and neck pain and remembered this was the case during lunch. Ms. Ingold testified Plaintiff gave no indication of how or when her back pain began during the afternoon phone call.
13. The Full Commission finds Ms. Ingold's testimony to be more credible than Plaintiff's.
14. In her recorded statement of October 2009, Plaintiff also told the Defendant-Carrier that she traveled to Myrtle Beach, South Carolina, the weekend after the alleged date of injury for a week-long CME conference. Plaintiff claimed her son drove the entire way so she *Page 5 
could recline in the car and that she spent nearly all of her time while at the CME conference in her room due to lower back pain. Plaintiff stated she did not go to the beach or join in any other activities while she was there.
15. Prior to the hearing before the Deputy Commissioner, Defendants produced photographs from Plaintiff's company owned cell phone that depicted Plaintiff sitting, walking, and even posing on the beach with her family during the CME conference. Plaintiff did not appear to be in discomfort in the pictures. The pictures contradict Plaintiff's recorded statement.
16. Also prior to the hearing before the Deputy Commissioner and during the discovery process, Plaintiff produced credit card records that showed she made charges at numerous retail outlet stores in Myrtle Beach during the CME conference. This evidence contradicts Plaintiff's recorded statement.
17. Plaintiff claimed she returned home to Greensboro with her boyfriend following the CME conference on August 22, 2009. Plaintiff testified that her boyfriend had traveled to the conference separately and that her son, who had driven her there, had left earlier in the week.
18. The record of Plaintiff's credit card charges shows an August 23, 2009 charge at a gas station in Buford, Georgia. When this was pointed out to Plaintiff on cross-examination at hearing, she attempted to explain the station was on the way from Myrtle Beach to Greensboro, North Carolina. However, the Commission took judicial notice that Buford, Georgia, is a town approximately 30 minutes north of Atlanta and not on the normal route from Myrtle Beach to Greensboro, North Carolina. Plaintiff then admitted she had travelled with her son from the Conference to Atlanta to help him move back to college. This testimony contradicted her earlier claim that her son left the conference early and that her boyfriend drove her directly home. This *Page 6 
also contradicted Plaintiff's reported levels of pain and physical restriction noted in her medical records at the time.
19. Plaintiff testified she was concerned with her job security at the time of the alleged injury, due to poor performance evaluations in the year prior. Plaintiff also testified she had contacted the employer she began working for on November 9, 2009, prior to the date of the alleged injury.
20. After being written out of work by Dr. Stern for her lower back pain, Plaintiff elected to receive carpal tunnel surgery for a non-work-related medical issue on September 24, 2009.
21. On October 21, 2009, Dr. Stern noted Plaintiff had stated she had a new job starting November 9, 2009 and wanted to try to go back to work. Dr. Stern released her to return to work beginning November 9, 2009. On or about October 21, 2009, Plaintiff provided to Defendant-Employer a written resignation effective November 1, 2009.
22. Consistent with Defendant-Employers' policy, Plaintiff was paid for the time she spent at the CME conference and was then paid her earned time off by Defendant-Employer beginning on or about the date she was written out of work after the conference. Plaintiff's accrued earned time off ran out on or about the time she left Defendant-Employer and began working for her new employer.
23. Dr. Joseph Stern and Dr. Harold Lee Hall testified there was no subjective evidence in Plaintiff's diagnostic images following August 12, 2009, to indicate any acute event had occurred to cause Plaintiff's symptoms. *Page 7 
24. Dr. Stern testified, and the medical records in evidence reflect, that most of the instances in which Plaintiff had experienced an onset of lower back pain in the years prior to the alleged injury, that no specific incident had occurred to cause the onset of said pain.
25. Dr. Stern testified it was possible Plaintiff's lower back pain she presented with on August 13, 2009, occurred without any specific incident or event as its cause. Dr. Stern testified the only objective evidence he had that any incident occurred was Plaintiff's report to him.
26. Plaintiff's testimony is the only independent evidence in the record that Plaintiff sustained a specific traumatic incident on August 12, 2009.
27. The Full Commission finds Plaintiff's testimony is not credible regarding the alleged injury by accident.
28. Based upon the greater weight of the evidence, Plaintiff has failed to produce evidence that she sustained a specific traumatic incident during and in the course of her employment with Defendant-Employer.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission finds the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, Plaintiff has the burden of proving every element of compensability. As part of this burden, Plaintiff must present convincing evidence establishing these elements. N.C. Gen. Stat. §§ 97-2(6), 97-2(9); Harvey v. RaleighPolice Depart.,96 N.C. App. 28, 384 S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); *Page 8 Gaddy v. Kern, 17 N.C. App. 680, 195 S.E.2d 141, 143, cert.denied 283 N.C. 585, 197 S.E.2d 873 (1973).
2. In this case, Plaintiff has failed to meet her burden of proving by the greater weight of the evidence that she sustained a compensable specific traumatic incident of the work assigned in the course of her employment with Defendant-Employer on or about August 12, 2009. N.C. Gen. Stat. §§ 97-2(6), 97-2(9);Harvey v. Raleigh Police Depart., 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 195 S.E.2d 141, 143, cert denied283 N.C. 585, 197 S.E.2d 873 (1973).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for worker's compensation benefits is hereby DENIED.
2. Each side shall bear its own costs.
This the 27th day of July 2011.
 S/_______________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/_________________ LINDA CHEATHAM COMMISSIONER *Page 9 
S/_________________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1