***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Glenn.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. On or about November 6, 2009, Defendant-Employer was insured by the North Carolina Auto Dealers' Association. The servicing agent for the Defendant is Brentwood Services Administrators.
3. The issues to be determined are as follows:
 a. Whether Plaintiff sustained an injury by accident while in the course and scope of his employment with Defendant-Employer on or about November 6, 2009, resulting in injuries to his back?
 b. If so, to what, if any, workers' compensation benefits is Plaintiff entitled to recover under the North Carolina Workers' Compensation Act?
 c. Should the claim be referred to the North Carolina Industrial Commission Fraud section for further investigation of the Plaintiff or the Defendant-Employer?
 d. Should Defendants be sanctioned for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 e. Did an employee-employer relationship exist at the time of Plaintiff's alleged injury? *Page 3 
4. The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
 a. Stipulation 1: Industrial Commission Forms, Orders and Discovery;
 b. Stipulation 2: Plaintiff's Medical Records;
 c. Plaintiff's Exhibit 1: Comments on Facebook by Charles Davis;
 d. Plaintiff's Exhibit 2: March 9, 2010 Letter to Mr. Turner with the North Carolina Department of Labor from Ms. Kathy Haithcock;
 e. Plaintiff's Exhibit 3: Facebook regarding Mark Kelly (friends list of Charles Davis);
 f. Plaintiff's Exhibit 4: Statement by Mark Kelly for North Carolina Department of Labor Investigation;
 g. Plaintiff's Exhibit 5: Affidavit by David Bradfield;
 h. Plaintiff's Exhibit 6: Affidavit by Ms Tresseler;
 i. Plaintiff's Exhibit 7: Affidavit by Mr. Barton; and,
 j. Charles Davis' Facebook Account with Comments.
 ***********
The Pre-Trial Agreement along with its attachments and any additional stipulations are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon a preponderance of the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 36 years old and was employed by Volvo of Cary as a service advisor.
2. Plaintiff was employed as a service advisor with Defendant-Employer for over four years. He was initially employed by Defendant-Employer on or about July 5, 2005. Based upon Plaintiff's pre-injury wages, Plaintiff is entitled to the maximum compensation rate for 2009 of $816.00.
3. Prior to the alleged November 6, 2009 work injury, Plaintiff had undergone lower back surgeries in 2000 and 2001 performed by Dr. Robin Koeleveld with Raleigh Neurosurgical Clinic in relation to a low back injury while lifting a tire while working for another employer. In a letter dated July 12, 2000, Dr. Koeleveld noted that Plaintiff sustained a work-related injury approximately two years prior to his low back and left leg when he slipped and almost fell.
4. Plaintiff claimed that on or about September 13, 2008, he slipped on some oil and twisted his back.On September 23, 2008, Plaintiff underwent an MRI of his lower back that did not reveal a ruptured disc. Dr. Koeleveld determined that Plaintiff had not sustained any serious injury and concluded that the radicular symptoms Plaintiff was experiencing was related to his previous surgery. Prior to November 6, 2009, Plaintiff had last sought medical treatment for his lower back on or about August 24, 2009, when he sought treatment for lower back pain at North Raleigh Primary Care.
5. Prior to the alleged November 6, 2009 injury, Plaintiff's sole medical treatment for his neck was on or about September 7, 2007 when he sought treatment for upper neck and back pain with his primary care physician at North Raleigh Primary Care. He was diagnosed with a neck and thoracic sprain and prescribed medications. No specific accident caused this neck pain and Plaintiff received no further treatment for these injuries. *Page 5 
6. In 2008, Ebony Carpenter served as the warranty claims administrator for Defendant-Employer. Her job duties required her to review repair orders to insure the orders included an itemization of parts and labor and that these documents were submitted in a timely manner to the manufacturer so that Defendant-Employer would be reimbursed for the costs of the parts and labor. In early 2008, these repair orders had to be submitted to the manufacturer within 120 days of the date that the repair order was opened. A repair order was opened on the date that a customer requested the repairs. In 2008, Defendant-Employer sustained the loss of reimbursement payments for service orders that were not submitted to the manufacturer in a timely manner.
7. In January 2009, Ebony Carpenter was relieved of her duties as the warranty claims administrator, and Plaintiff was assigned the duties of this position in addition to his duties as a service advisor. Plaintiff was required to submit service orders to be reviewed by the service manager, Charles Davis. If the service order was approved, Plaintiff was then required to submit the claim for reimbursement directly to the manufacturer. Both Plaintiff and Charles Davis were responsible for ensuring that these documents were submitted in a timely manner. When Plaintiff assumed the duties of the warranty claims administrator, the time to submit the warranty claims had been reduced from 120 days to 90 days. The salary for Charles Davis was directly related to the receipt of reimbursement payments from the manufacturer.
8. From January 2009 to June 2009, Plaintiff served as the warranty claims administrator. Plaintiff and Charles Davis were unable to process all of the warranty claims within the 90-day time period as required by the manufacturer. In order to extend the time available to submit warranty claims to the manufacturer, Plaintiff would close out a service order, open a new order with a new starting date for the 90-day time period to run and then *Page 6 
transfer the information concerning the parts and labor costs associated from the closed-out order to the new order.
9. In February 2009, Plaintiff prepared a service order under a warranty owned by Mr. Robert Henning. The actual vehicle that was repaired by Defendant-Employer was owned by Charles Davis. As a result, Mr. Davis' car was repaired under another person's warranty agreement. This service order was included in the set of service orders that Defendant-Employer wrote off as losses as a result of warranty claims not being submitted to the manufacturer in a timely manner for the time period between January 2009 and June 2009. This incident ultimately led to Mr. Davis' termination in April 2010.
10. In June 2009, Renee Pakala, controller for Defendant-Employer, determined that there were warranty claims that had not been submitted to the manufacturer within the allotted 90-day time period. Defendant-Employer wrote off approximately $10,000 in losses as a result of warranty claims not being submitted to the manufacturer in a timely manner.
11. Both Plaintiff and Charles Davis received a warning that they could be discharged if repair orders were not submitted in a timely manner following Renee Pakala's determination that the problem had continued to persist between January 2009 and June 2009.
12. Plaintiff was relieved of his duties as the warranty claims administrator and these duties were transferred to Gina Cullins in June 2009. Plaintiff continued his duties as a service advisor and was required to continue to submit Ford warranty claim service orders to be reviewed by the service manager, Charles Davis.
13. Between June 2009 and November 6, 2009, Plaintiff continued to close out service orders and reopen them as new orders with new starting dates for the 90-day time period *Page 7 
to run and then direct the transfer of the information concerning the parts and labor costs associated from the closed-out order to the new order.
14. During the weekend of October 31, 2009, Renee Pakala began a parts inventory reconciliation. She discovered that the problem with submitting warranty claims to the manufacturer had persisted.
15. On November 2, 2009, an unusually high number of service orders were voided from the computer system, which was discovered by Ms. Pakala. Ms. Pakala then contacted Ronnie Lumley, the fixed operations director, to assist her in the investigation. His job duties required him to oversee the service department, the parts department, and the body shop. As a result of the investigation, Ms. Pakala discovered that Plaintiff had been moving parts and labor from one repair order to another and voiding the prior orders. In addition, Ms. Pakala found open warranty claim repair orders which were opened by Plaintiff that had not been submitted to the new warranty administrator.
16. In 2009, Defendant-Employer employed three service advisors, including Plaintiff, Mark Smith, and Allen Hester. Both Plaintiff and Mr. Hester were supervised by Charles Davis. Plaintiff was responsible for submitting the Ford warranty claims and Mr. Hester was responsible for submitting the Mazda warranty claims. Only the Ford warranty claims were found to contain irregularities.
17. On November 5, 2009, Renee Pakala, Ronnie Lumley, and Charles Davis met with Clarence Ferguson, the general manager for Defendant-Employer, to discuss what, if any, actions needed to take place with regard to the continuing problem of the improper handling of warranty claims. At that meeting, the decision was made to terminate Plaintiff. The agreed upon *Page 8 
plan was for Clarence Ferguson to meet with Plaintiff the following day when Plaintiff arrived at work so that Clarence Ferguson could meet with him face to face and terminate him.
18. Following the November 5, 2009 meeting, a payroll notice was completed and signed by Clarence Ferguson and Charles Davis showing the date of termination as November 5, 2009, citing the reason for termination as improper administration of warranty procedures. Mr. Davis testified that the payroll notice was signed prior to November 6, 2009.
19. On November 5, 2009, Plaintiff underwent bariatric surgery performed by Dr. Bovard. This surgery was performed to assist Plaintiff in losing weight.
20. On November 5, 2009, following the surgery, Plaintiff contacted Charles Davis by cellular phone. Plaintiff claims that he and Mr. Davis discussed Plaintiff's surgery, the death of a co-employee's sister, and whether Plaintiff wanted a portion of the deer Mr. Davis had killed earlier that week. Mr. Davis testified that while traveling home after work, as instructed by Mr. Lumley, he informed Plaintiff that he was terminated by telephone only because Plaintiff was persistent in trying to find out what was going on at work during their conversation.
21. Mr. Davis testified that he notified both Mr. Ferguson and Mr. Lumley that he had terminated Plaintiff on November 5, 2009, following his telephone conversation with Plaintiff. In his testimony, Mr. Davis stated that Mr. Lumley directed him to contact Mark Kelly by telephone and hire Mr. Kelly to replace Plaintiff.
22. Mr. Lumley testified that he directed Charles Davis to proceed and terminate Plaintiff on November 5, 2009, by telephone because Plaintiff continued to call Mr. Davis. Following the termination of Plaintiff, Mr. Davis contacted Mr. Kelly and offered him the service advisor position that Plaintiff held. *Page 9 
23. While employed by Defendant-Employer, Plaintiff usually arrived at work at 7:00 a.m. and usually carpooled to and from work with Mr. Davis. However, on November 6, 2009, just one day after his bariatric surgery, Plaintiff drove to Defendant-Employer's premises himself and clocked in at 5:59 a.m. Plaintiff claims that he arrived at work early in order to catch up on work as a result of having missed work the day before because of his surgery. Plaintiff alleges that after clocking in that morning, he slipped on some oil and grease on the concrete floor in one of the service bays, causing him to fall. Plaintiff claims that as a result of the alleged fall, he hit his head, buttocks, lower back, upper back, left hand, and left shoulder on the floor. At 6:07 a.m., Plaintiff contacted Wake County EMS. At 6:11. a.m., Plaintiff contacted Charles Davis and informed him that he slipped in the shop and injured his back, stomach, and head.
24. Mr. Davis testified that when he arrived at Defendant-Employer's premises, he inspected the bay in which Plaintiff alleged to have fallen, but did not see any oil, grease, or any other slick substance on the floor.
25. At 6:16 a.m., Wake County EMS arrived at the car dealership where Plaintiff was found supine on the shop floor. Plaintiff reported to the Wake County EMS that he had slipped on some grease on the floor. He reported that he had struck his head and was experiencing left shoulder and mid back pain. He arrived at Rex Hospital Emergency Room at 6:49 a.m. where he reported he fell on his back bracing himself with his left arm. Plaintiff was prescribed pain medications and released from the hospital with instructions to follow up with his primary care physician within three days.
26. Plaintiff sought medical treatment on November 9, 2009, with his primary care physician Dr. Gina Micchia with complaints of neck pain, back pain, and numbness in his left arm and fingers. Dr. Micchia directed Plaintiff to initially undergo an x-ray of his neck. Dr. Micchia *Page 10 
further directed Plaintiff to undergo MRIs of his cervical, thoracic, and lumbar regions of his back.
27. On or about November 10, 2009 or November 11, 2009, Kathleen Haithcock, the payroll and benefits specialist for Defendant-Employer, received written notice that Plaintiff was terminated. The written notice was undated. It was signed by Charles Davis and Clarence Ferguson and indicated that Plaintiff had been terminated on November 5, 2009.
28. On November 12, 2009, Plaintiff contacted Kathleen Haithcock to find out the status of his workers' compensation claim. She informed Plaintiff that Defendant-Employer was not going to file his workers' compensation claim and that he needed to contact Charles Davis. Plaintiff then contacted Charles Davis to discuss his alleged injury. Plaintiff claims that this was the first time Charles Davis informed him that he had been terminated. The Full Commission does not find Plaintiff's testimony that he first learned of his termination on November 12, 2009, to be credible.
29. The Full Commission finds the testimony by Plaintiff, Mr. Davis, and Mr. Lumley regarding Plaintiff's termination to be inconsistent. The Full Commission finds that Plaintiff and Mr. Davis are unreliable and that the none of the testimony by Plaintiff or Mr. Davis is credible.
30. A November 18, 2009 MRI of Plaintiff's lumbar spine revealed that he had sustained a new ruptured disc at the L4-5 level. Another MRI of Plaintiff's cervical spine of the same date revealed that Plaintiff had a small disc protrusion at C6-7 on the right with some deformation in the spinal cord.
31. Following his November 12, 2009 conversation with Charles Davis, Plaintiff filed a claim for unemployment compensation. In response to Plaintiff's claim for unemployment compensation, Kathleen Haithcock completed a response form dated November 25, 2009, *Page 11 
reporting that Plaintiff had been terminated for improper administration of warranty procedures. Ms. Haithcock noted on the form that Plaintiff had last worked for Defendant-Employer on November 6, 2009.
32. On November 25, 2009, Kathy Haithcock completed an ESC Notice of Claim and Request for Separation Information Form indicating that Plaintiff last worked on November 6, 2009. Ms. Haithcock also submitted an Industrial Commission Form 22 on or about December 4, 2009, noting that Plaintiff worked for Defendant-Employer on November 6, 2009. She calculated Plaintiff's average weekly wage utilizing wages Plaintiff received for work performed on November 6, 2009. Ms. Haithcock testified that the information concerning Plaintiff's last day of work with Defendant-Employer was derived from the computer system based upon the last day Plaintiff clocked in and does not represent Plaintiff's termination date.
33. On December 2, 2009, Dr. Dennis Bullard performed fusion surgery at the L4-5 level of Plaintiff's lower back. On February 16, 2010, Dr. Dennis Bullard performed fusion surgery on Plaintiff's neck. This surgery revealed that Plaintiff had sustained a ruptured disc at the C6-7 level.
34. On April, 29, 2010, Plaintiff began new employment as a service advisor with Volvo of Cary.
35. Upon further investigation of Plaintiff's workers' compensation claim, Mr. Lumley and Ms. Pakala reported to Jim Bankston, Director of Human Resources for Defendant-Employer, that three employees, David Bradfield, Nick Barton, and Jennifer Tressler informed them that Plaintiff made statements suggesting that he had staged his workers' compensation injury. On May 4, 2010, following the termination of Mr. Davis in April 2010, Jennifer Tressler, Nick Barton, and David Bradfield each signed affidavits swearing that Plaintiff made statements *Page 12 
in their presence suggesting that he would stage an accident at work by falling. The Full Commission finds that the affidavits of Jennifer Tressler, Nick Barton, and David Bradfield are not credible.
36. The Full Commission finds that the totality of the evidence in this matter is insufficient to prove Plaintiff's claim in that Plaintiff's evidence as a whole failed to support his allegation that he sustained a compensable injury by accident on November 6, 2009. The Full Commission finds that the testimony, as a whole, in this case was not sufficiently consistent or credible to show that Plaintiff suffered a compensable injury by accident on November 6, 2009.
37. The Full Commission finds based upon a preponderance of the evidence that Plaintiff failed to prove that he was an employee of Defendant-Employer at the time of the alleged injury or that he suffered a compensable injury by accident while employed with Defendant-Employer on November 6, 2009.
38. Defendants' denial of this claim was reasonable and not based upon stubborn unfounded litigiousness.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, Plaintiff has the burden of proving every element of compensability. As part of this burden, Plaintiff must present convincing evidence establishing these elements. N.C. Gen. Stat. §§ 97-2(6), 97-2(9); Harvey v. RaleighPolice Dept.,96 N.C. App. 28, 384 S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern, *Page 13 17 N.C. App. 680, 195 S.E.2d 141, 143, cert. denied283 N.C. 585, 197 S.E.2d 873 (1973).
2. Plaintiff has failed to prove by the greater weight of the evidence that he was an employee of Defendant-Employer at the time of the alleged injury on November 6, 2009. N.C. Gen. Stat § 97-2(2).
3. Plaintiff has failed to meet his burden of proving by the greater weight of the evidence that he sustained a compensable injury by accident arising out of and in the course of his employment with Defendant-Employer on or about November 6, 2009. N.C. Gen. Stat § 97-2(6); Harvey, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 195 S.E.2d 141, 143, cert denied283 N.C. 585, 197 S.E.2d 873 (1973).
4. As Plaintiff has failed to meet his burden to show that he sustained a compensable injury by accident, Plaintiff is not entitled to disability or medical compensation as a result of the alleged injury. N.C. Gen. Stat §§ 97-2(9); 97-25.
5. Defendants' denial of this claim was reasonable and not based upon stubborn unfounded litigiousness. N.C. Gen. Stat. § 97-88.1. Therefore, Plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is Denied.
2. Each side shall bear its own costs. *Page 14 
This the 23rd day of August, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1