***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. *Page 2 
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. Defendant-employer was self-insured with Broadspire Insurance Company as administrator.
4. Plaintiff's appropriate average weekly wage is $647.20.
5. The following items were stipulated into evidence:
 a. The Pre-Trial Agreement, labeled as stipulated exhibit 1.
 b. A bound stack of various documents and medical records, tabbed 1-8 and labeled as stipulated exhibit 2.
 c. Plaintiff's Form 22 Wage Chart, labeled as stipulated exhibit 3.
 ************ FINDINGS OF FACT
1. Plaintiff was 41 at the time of the hearing before the Deputy Commissioner, and worked as a finishing operator for defendant-employer for 18 months ending April 22, 2005. Plaintiff also worked as a weaver for defendant-employer for one year before that. Defendant-employer manufactures clothing labels.
2. The finishing operator job involved assisting the feeding of narrow ribbon into a finishing machine. There was conflicting testimony regarding the amount of time plaintiff was required to spend untangling knots in this ribbon as it was fed into the machine.
3. Dr. David Baker, a Charlotte orthopedic surgeon, began treating the employee on September 3, 2004. Dr. Baker diagnosed right carpal tunnel syndrome and right cubital tunnel syndrome. On December 22, 2004 Dr. Baker performed surgery on plaintiff's right arm and wrist for those conditions. *Page 3 
4. Dr. Baker testified that he was unable to determine whether plaintiff's work for defendant-employer put her at an increased risk of contracting her condition than the general population. Dr. Baker also testified that he was unable to determine whether plaintiff's work for defendant-employer caused her carpal tunnel syndrome.
5. On April 8, 2005 plaintiff began treatment with Dr. Kathryn Caulfield, a Gastonia hand surgeon. Dr. Caulfield testified that plaintiff's work for defendant-employer "[t]heoretically" could put her at greater risk of carpal tunnel syndrome than the general population and that plaintiff's work for defendant-employer "potentially" could have caused her carpal tunnel syndrome. Dr. Caufield expressed "moderate" confidence in those opinions. However, Dr. Caulfield also testified that she had not seen the finishing job performed and that she had relied on the description of the job she received from plaintiff and plaintiff's attorney. She also testified that she was unaware that an ergonomic study had been done and the findings of an ergonomic study could change her opinions.
6. Defendant-employer laid off plaintiff on April 22, 2005 as part of a large force reduction. Plaintiff's termination was not related to her workers' compensation case or physical condition.
7. Because plaintiff questioned the sufficiency of the job videos initially produced in this matter, additional video was taken subsequent to the hearing. Although plaintiff denied the validity of this additional video, Mr. Wes Blakely, the dying/ finishing manager for defendant-employer, testified that the supplemental video accurately reflected the finishing operator job.
8. Mr. Blakely specifically testified that the machine in the supplemental video was running as fast as it possibly could without intervention of a mechanic, and that it was set at the maximum speed at which good results could be achieved with the material being used. *Page 4 
9. Al Gorrod testified live at the hearing and by deposition subsequent to the hearing. Mr. Gorrod testified subsequently by deposition in order to discuss the supplemental video and its impact on his opinions. Mr. Gorrod was present at defendant-employer's facility during the taking of the supplemental video, as was plaintiff.
10. Mr. Gorrod uniformly testified that, in his opinion as an ergonomist, the job perfomed by plaintiff was not repetitive enough to expose plaintiff to an increased risk of contracting cumulative trauma disorders, or to cause cumulative trauma disorders. Mr. Gorrod also testified that plaintiff made no complaint during the taking of the supplemental video regarding its accuracy in representing the tasks plaintiff performed.
11. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer caused her to develop an occupational disease or diseases.
12. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer placed her in a position of greater risk than the general public of contracting an occupational disease or diseases.
 ************
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony. Holly v. ACTS, Inc., 357 N.C. 228,234, 581 S.E.2d 750, 754 (2003); Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, 35, 384. S.E.2d 549, 553, disc. rev.denied, 325 N.C. 706, 388 S.E.2d 454 (1989). *Page 5 
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), a plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Fann v. BurlingtonIndust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Plaintiff has not proven by the greater weight of the evidence that her employment with defendant-employer caused her to contract carpal tunnel syndrome or cubital tunnel syndrome. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tutlex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983),Fann v. Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982);Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
4. Plaintiff has not proven by the greater weight of the evidence that her employment with defendant-employer placed her at greater risk than the general public of contracting carpal tunnel syndrome or cubital tunnel syndrome. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. Plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1, etseq.
 ************
Based upon the foregoing Findings of Facts and Conclusions of Law, the undersigned enters the following: *Page 6 
 ORDER
1. This claim must, under the law be, and hereby is DENIED.
2. Each side shall bear its own costs.
This the 7th day of May 2007
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE BALLANCE COMMISSIONER
 S/___________________ PAMELA T. YOUNG COMMISSIONER *Page 1