* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The appointment of any party who appears in a representative capacity is valid and no additional proof of appointment or capacity is required.
4. An employer-employee relationship existed between defendant-employer and plaintiff.
5. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
6. ACE USA, Inc. is the workers' compensation carrier for employer Contigroup Companies, Inc.
7. Plaintiff's compensation rate is $446.67 subject to verification by a Form 22.
8. A Form 61 Denial of Workers' Compensation Claim was filed by defendants on 4 May 2006.
9. A Form 33 was filed by plaintiff on 5 May 2006.
10. Plaintiff was employed by Contigroup Companies, Inc. as a truck driver.
11. The following items were stipulated into evidence:
 a. The Pre-Trial Agreement, marked as stipulated exhibit 1.
 b. Industrial Commission Forms filed in this matter, collectively paginated 1-7 and marked as stipulated exhibit 2. *Page 3 
 c. A collection of plaintiff's medical records, collectively paginated 1-37 and marked as stipulated exhibit 3.
 d. A collection of documents including discovery and plaintiff's employment records, collectively paginated 1-37 and marked as stipulated exhibit 4.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was 40 years old. Before working for defendant-employer, plaintiff worked in Florida in orange and grapefruit groves. Plaintiff completed the 9th grade and has not attained a G.E.D.
2. Plaintiff began working for defendant-employer as an egg delivery truck driver in September 2004. As part of his job, plaintiff had to move very large wheeled egg "stands" from farmers' chicken houses onto a lift and into his truck, replacing these stands with empty stands from his truck. These stands held nearly 5,000 eggs, and, when full, could weigh up to 1,200 pounds. Plaintiff's truck held 15 stands, and plaintiff picked up over 30 stands per day on average. The egg stands were on wheels. However, these wheels worked with differing degrees of efficiency and the stands sometimes required extra force to move. The poor performance of the egg stands' wheels was known to defendant-employer.
3. On Saturday, January 28, 2006 plaintiff noticed pain in both shoulders while moving egg stands with wheels that were particularly difficult to manipulate. Plaintiff completed his shift that day but continued to have shoulder pain. Plaintiff reported this pain to his supervisors Monday morning. As time progressed, plaintiff could not lift or move his shoulders *Page 4 
and had difficulty sleeping. Plaintiff saw the plant nurse and eventually sought medical care on March 15, 2006, when he was seen at Blue Ridge Orthopaedics. Plaintiff was first seen by Jason Ferris, P.A. The medical note for this visit, in the "Impression" section, reads "Bilateral right worse than left work-related impingement syndrome." Plaintiff's treatment continued at Blue Ridge under the supervision of Dr. William E. Refvem. Plaintiff received shots, but the shots did not relieve his pain.
4. Plaintiff's pain continued, radiating down both arms into his elbows and causing numbness in both hands. Defendant-employer gave plaintiff light-duty work. Plaintiff was given a delivery job that required driving only. Plaintiff was also given the task of cleaning machinery with a hose.
5. In May 2006 plaintiff was written out of work for one month. Although plaintiff received short-term disability benefits during this time, for economic reasons he was forced to move his family from Booneville to Mount Airy.
6. Plaintiff was first seen by Tri-County Orthopaedics on November 29, 2006. At this visit, plaintiff was diagnosed with chronic bilateral shoulder impingement syndrome by Dr. Courtenay S. Whitman. On January 16, 2007 Dr. Whitman performed a left shoulder arthroscopy with subacromial decompression CPT on plaintiff. Plaintiff has not worked since this surgery. After plaintiff's left shoulder failed to improve, Dr. Whitman performed a second surgery on plaintiff's left shoulder on or about June 15, 2007.
7. Plaintiff's wife and pastor testified that plaintiff was very active physically before January 28, 2006 and exhibited no shoulder problems. However, after that date, plaintiff's physical activity with his shoulders and arms was severely limited. *Page 5 
8. Dr. Whitman testified by deposition that plaintiff's job as an egg delivery truck driver put him at a greater risk to contract chronic bilateral shoulder impingement syndrome than members of the general public not so employed. Dr. Whitman further testified that, assuming the veracity of the health history plaintiff related, plaintiff's job with defendant-employer was a significant causal factor in his development of chronic bilateral shoulder impingement syndrome.
9. Dr. Whitman also testified that he removed plaintiff from work after his January 16, 2007 surgery, that plaintiff could not work currently, and that plaintiff required surgery on his right shoulder.
10. Dr. Refvem testified that plaintiff's work for defendant-employer placed him at an increased risk as compared to the general public of contracting shoulder impingement syndrome. Dr. Refvem further testified that plaintiff's job was a significant causal factor to the development of the impingement syndrome.
11. Based on the greater weight of the evidence, the Full Commission finds that plaintiff's work for defendant-employer as an egg delivery truck driver placed him at increased risk of developing bilateral shoulder impingement syndrome as compared to the general public.
12. The Full Commission further finds that plaintiff's work for defendant-employer, as an egg delivery truck driver, was a significant factor in causing his bilateral shoulder impingement syndrome.
13. Given the credible medical and vocational evidence of record, and as a result of his compensable occupational disease, plaintiff has been unable to earn any wages in any employment from January 16, 2007, through the present and continuing.
14. The medical treatment provided thus far, by and under the direction of Drs. Whitman and Refvem, has been reasonably necessary to effect a cure or give relief from plaintiff's *Page 6 
bilateral shoulder impingement syndrome. Plaintiff has not reached maximum medical improvement and requires further and continuing treatment by Dr. Whitman, including surgery on his right shoulder.
15. The evidence of record indicates that plaintiff's average weekly wage yields a workers' compensation rate of $446.67.
16. Although subsequent to May 6, 2006 plaintiff helped a friend by driving for him on a few occasions, and although plaintiff similarly has done some driving for his church, these activities do not demonstrate ability on plaintiff's part to secure or perform work in a competitive job environment.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony. Holly v. ACTS, Inc., 357 N.C. 228,234, 581 S.E.2d 750, 754 (2003); Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, 35, 384. S.E.2d 549, 553, disc. rev.denied, 325 N.C. 706, 388 S.E.2d 454 (1989).
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); *Page 7 Rutledge v. Tutlex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).Fann v. Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982);Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Plaintiff has proven by the greater weight of the evidence that his employment as an egg delivery truck driver placed him at greater risk than the general public of contracting bilateral shoulder impingement syndrome. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
4. Plaintiff has proven by the greater weight of the evidence that his employment as an egg delivery truck driver caused him to contract bilateral shoulder impingement syndrome. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tutlex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983),Fann v. Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982);Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. Given the credible medical and vocational evidence of record, and as a result of his compensable occupational disease, plaintiff is temporarily totally disabled and is entitled to compensation at the rate of $446.67 from 16 January 2007 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distribution, 108 N.C. App. 762 (1993).
6. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the compensable occupational disease. This treatment includes, but is not limited to, past and future medical treatment by Dr. Whitman, including anticipated right shoulder surgery. N.C. Gen. Stat. §§ 97-25; 97-25.1. *Page 8 
7. The evidence of record indicates that plaintiff's average weekly wage yields a workers' compensation rate of $446.67. N.C. Gen. Stat. § 97-2(5).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Given the credible medical and vocational evidence of record, and his compensable occupational disease, defendants shall pay plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $446.67 per week from 16 January 2007 and continuing until plaintiff returns to work or further order of the Commission. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay all of plaintiff's medical expenses incurred or to be incurred as a result of the compensable occupational disease, subject to the provisions of N.C. Gen. Stat. § 97-25.1. This treatment includes, but is not limited to, past and future medical treatment by Dr. Whitman, including anticipated right shoulder surgery.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the 29th day of February, 2008. *Page 9 
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1