***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen, and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between defendant-employer and plaintiff. ACE USA (with ESIS as the servicing agent) was the insurer on the risk on November 14, 2006, the date of injury.
5. Plaintiff's average weekly wage is $1,012.79, which yields a compensation rate of $675.23.
 ***********
The following were entered into evidence by the Deputy Commissioner as:
 STIPULATED EXHIBITS
1. The Pretrial Agreement, marked as stipulated exhibit 1.
2. A collection of documents including the Industrial Commission forms filed in this matter and plaintiff's medical records, marked as stipulated exhibit 2.
3. Additional medical records, including several pages from Reidsville Primary Care, hand-numbered 1-14 and marked as stipulated exhibit 3.
 *********** *Page 3 ISSUE PRESENTED
Did plaintiff sustain a compensable occupational disease under the North Carolina Workers' Compensation Act pursuant to N.C. Gen Stat. § 97-53(13), and, if so, to what benefits is plaintiff entitled?
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 49 years old at the time of the hearing before the Deputy Commissioner. Plaintiff writes with his right hand, but does nearly everything else left-handed.
2. Plaintiff worked as a truck driver for defendant-employer for over 13 years. In November 2006, plaintiff was working as a "barrel truck" driver. As part of this job, plaintiff emptied 55 gallon tubs and 30 gallon barrels full of restaurant waste grease into his truck. Plaintiff reported to work at 1:00 a.m. and worked 12-hour shifts. Plaintiff completed 50-60 stops per shift, emptying an average of two or three grease containers per stop. After plaintiff completed all the stops for his shift, he returned to defendant-employer and his truck was weighed.
3. When emptying the 55-gallon tubs, plaintiff sucked the grease through a hose into his truck. Each grease tub could weigh 400-500 pounds when full of grease. Plaintiff had to use both hands to manipulate the hose within the grease container to avoid trash in the barrel while sucking out the grease. The grease hoses are three inches in diameter.
4. When emptying the 30-gallon barrels, plaintiff had to maneuver the barrels onto a lift in the back of his truck. Michael Hooks, the corporate routing manager for defendant-employer, *Page 4 
testified that the barrel truck drivers physically moved 90 percent of the barrels to the truck lift by tilting them and then rolling the tilted barrel. The grease barrels weighed as much as 200-300 pounds. The barrel then would be lifted up and dumped into the truck by a hydraulic mechanism. Furthermore, if the grease were too cold, a heating apparatus on the top of the truck would be operated to liquefy the grease.
5. Mike Hooks testified that all barrels were waist high and that all work was done below shoulder height. Plaintiff testified that he stands 5'7" tall, and that the barrels were well below his shoulder height. He testified that he made 50-60 stops for barrels in an average week and, of those stops, only 25-30 would be ready to be serviced. And of those stops with barrels needing servicing, most had two or three barrels to be serviced. Plaintiff estimated an hour of time would bass between stops in which he had to service barrels.
6. In November 2006 plaintiff felt a sharp pain in his left shoulder while moving a grease container. Plaintiff reported the injury to Larry Ray when he returned to defendant-employer at the end of his shift.
7. Plaintiff went to his family doctor, Reidsville Primary Care, on January 25, 2007 and reported his left shoulder pain. The medical note states, "[Plaintiff] complains of progressive pain with reduced mobility of the left shoulder over the past year." On February 2, 2007, his family doctor referred plaintiff to Dr. Harrison with Reidsville Orthopaedics. Dr. Harrison eventually recommended that plaintiff undergo left shoulder surgery.
8. Plaintiff was evaluated by Battleground Urgent Care on March 30, 2007. The medical notes from this visit documents that plaintiff injured his left shoulder in November 2006 at work "lifting 55 gallon drums." The physician recommended surgery. *Page 5 
9. Plaintiff had a left shoulder surgery on June 27, 2007. Dr. Harrison performed the arthroscopic left shoulder decompression and a "mini-open rotator cuff repair."
10. Plaintiff worked until the day he had surgery. He was thereafter written out of work by Dr. Harrison from June 27, 2007, until April 7, 2008. Plaintiff returned to work with defendant-employer on April 18, 2008. This is the first date defendant-employer had a position available that was suitable for plaintiff. The job to which he returned was a "night shuttle" driver. This job requires plaintiff to drive a truck full of grease to Wadesboro but does not require plaintiff to handle grease containers. Plaintiff continued to work in this job as of the date of hearing before the Deputy Commissioner.
11. Upon plaintiff's return to work, Dr. Harrison released plaintiff at maximum medical improvement and assigned plaintiff a 10% permanent partial disability rating to plaintiff's left arm.
12. Dr. Harrison testified as to the issue of causation. In May 2007, when Dr. Harrison completed plaintiff's application for short-term disability, he initially found the shoulder injury to be unrelated to Plaintiff's work. In an August 2007 letter, Dr. Harrison stated the injury was the result of "frequent and repetitive overhead activity," which is not supported by the testimony of plaintiff and Mike Hooks. Next, in March 2008, Dr. Harrison stated he could not tell whether the job caused plaintiff's shoulder injury. Finally, at his deposition in June 2008, he was of the opinion that the job probably caused the condition; however, he also stated that it is possible that the rotator cuff tear was the result of a one-time injury. Given the inconsistencies in Dr. Harrison's opinions, and given his mistaken belief that plaintiff engaged in overhead activity, the Full Commission finds that the testimony of Dr. Harrison fails to show that plaintiff's rotator cuff injury was causally related to his job duties. *Page 6 
13. Dr. Michael Lauffenburger, who saw Plaintiff for an independent medical evaluation. Although Dr. Lauffenburger was of the opinion that plaintiff's rotator cuff tear was work-related, Dr. Lauffenburger was of the opinion that it was a one-time injury and not a repetitive or accumulative injury over time. Dr. Lauffenburger testified that if plaintiff was doing below shoulder-level work for five to ten minutes out of every 30 o 60 minutes, then he could not say with medical certainty whether plaintiff's job duties cause his shoulder problems. Thus, the Full Commission finds that the testimony of Dr. Lauffenburger fails to show that plaintiff's rotator cuff injury was causally related to his job duties.
14. Mr. William T. McClure, Jr., a certified ergonomic expert, observed an employee of defendant-employer performing plaintiff's job duties. Mr. McClure produced an Ergonomic Work Task Analysis and recorded a video of the job. Mr. McClure testified that all of plaintiff's work with respect to the barrels is done below shoulder level. It was his opinion, and the Full Commission finds as fact, that "the work tasks do not place the truck driver at an increased risk compared to the acceptable risk for development of musculoskeletal and/or cumulative trauma disorders to the upper extremity."
15. Based upon the totality of the evidence of record, including the testimony of Dr. Harrison, Dr. Lauffenburger, and Mr. McClure, the Full Commission finds that plaintiff has not provided sufficient evidence to show that his employment as a barrel truck driver placed him at increased risk of developing a rotator cuff tear as compared to the general pubic not so employed, and that the caused his left rotator cuff tear. Further, plaintiff has provided insufficient evidence to show that he sustained an injury by accident, occurring in the course and scope of his employment, in November 2006.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony.Holly v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003); Harvey v. RaleighPolice Department, 96 N.C. App. 28, 35, 384. S.E.2d 549, 553, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989).
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Fann v. BurlingtonIndust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Plaintiff has not proven by the greater weight of the evidence that the repetitive heavy tasks required by his employment as a barrel truck driver placed him at greater risk than the general public of developing a rotator cuff tear. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
4. Plaintiff has not proven by the greater weight of the evidence that the repetitive heavy tasks required by his employment as a barrel truck driver caused him to develop a rotator *Page 8 
cuff tear. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Fann v.Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982);Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
5. Plaintiff has not proven by the greater weight of the evidence that he sustained an injury by accident, occurring in the course and scope of his employment, in November 2006. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim under the law must be, and is hereby, DENIED.
2. Each side shall pay its own costs.
This __ day of May 2009.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ DIANNE C. SELLERS COMMISSIONER