***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments of the parties. The Full Commission finds that the appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS, the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 1 October 2007 involving his left shoulder and cervical spine, and if so to what indemnity and medical compensation, if any, is he entitled. *Page 2 
2. Whether on 11 August 2008, plaintiff sustained an injury by accident or aggravation of his cervical spine condition and left shoulder, and if so to what indemnity and medical compensation, if any, is he entitled.
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, plaintiff submitted the following:
 a. A Correspondence dated 28 July 2008 and a Correspondence dated 26 February 2009, which were admitted into the record over Defendants' Objection and collectively marked as Plaintiff's Exhibit (1) and;
 b. A Job Evaluation Form for Mr. Jamin Brooks, which was admitted into the record over Defendants' Objection and marked as Plaintiff's Exhibit (2).
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injuries.
4. An employee-employer relationship existed between the parties at the time of the *Page 3 
alleged injuries.
5. Defendant-employer in this case is Mac Sign Co., and the carrier liable on the risk is Accident Fund Insurance Company of America.
6. Plaintiff sustained an alleged injury to his cervical spine and left shoulder and neck on 1 October 2007 and an alleged injury/aggravation to his cervical spine and left shoulder on 11 August 2008.
7. Plaintiff's average weekly wage is $300.00.
8. Plaintiff was paid the entire days of the alleged injuries.
9. Plaintiff employee last worked for defendant-employer on 13 August 2008.
10. At the hearing, the parties submitted the following:
 a. A Packet of Various Stipulated Documents, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 i. Medical Records;
 ii. Discovery Responses;
 iii. Industrial Commission Forms and Filings and;
 iv. The Transcript of Plaintiff's Recorded Statement.
11. Also made part of the record are the depositions of Dr. Wenda McCutchan and Dr. David Kee.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT *Page 4 
1. As of the date of the Full Commission hearing, plaintiff was forty-eight (48) years of age with his date of birth being 12 November 1961. Plaintiff completed the eleventh grade and received his G.E.D. in approximately 1990.
2. Plaintiff began working for defendant-employer as a sign manufacturer and installer in approximately May 2006.
3. Prior to his employment with defendant-employer, plaintiff resided in Tustin, California where he worked for several years as a lube technician for Custom GMC. Prior to that, plaintiff delivered auto parts for Pacific Supply. While working for Pacific Supply, plaintiff filed a workers' compensation claim due to an injury he sustained to his lower back on
17 November 1997. However, at the hearing plaintiff denied filing the claim or receiving workers' compensation benefits in 1997.
4. Plaintiff has undergone two lumbar fusion procedures, paid for by the State of California. Additionally, plaintiff was declared one hundred percent (100%) disabled by the neurosurgeon who performed the fusion surgeries. Based upon his disability status, the State of California has been sending plaintiff a monthly payment of $765.00. Plaintiff will continue to receive this payment as long as his monthly gross earnings do not exceed $980.00.
5. The credible evidence of record establishes that plaintiff has not informed the State of California that he was earning in excess of $980.00 per month while working for defendant-employer. Additionally, plaintiff's job with defendant-employer requires him to lift heavy loads and stand for extended periods.
6. With defendant-employer, plaintiff initially worked in the "J-trimming" area where he glued plastic around letters for large signs. Later, plaintiff began performing various other duties including creating, painting, installing and removing signs. Plaintiff's duties require *Page 5 
him to frequently lift and hold heavy items above his head. If a sign was heavy or was to be installed at a significant height, employees utilized a bucket truck.
7. On 1 October 2007, plaintiff was directed to remove an old "Eckerd's" sign and install a new "Rite Aid" sign at a location in Dunn. Plaintiff used the bucket truck to lift himself to the appropriate height, and began unscrewing the hinges of the old sign. At some point, the sign fell towards plaintiff and he testified that he caught the sign as it was falling.
8. Plaintiff informed Mr. Denton Little, a field supervisor for defendant-employer, that the sign had fallen, but according to Mr. Little, did not report an injury or that he was experiencing a severe shooting pain in his left shoulder.
9. Mr. Lawrence Fatone, defendant-employer's co-owner, was not at the job site when the incident occurred. Mr. Fatone testified that upon his arrival, he was only informed that the sign nearly "got away" and was not informed by plaintiff of any injury or symptoms.
10. Mr. Jamin Brooks, a co-worker of plaintiff's at the time of the incident, corroborated plaintiff's testimony. Based upon the totality of the evidence, the undersigned give little, if any, weight to Mr. Brooks' testimony. According to Mr. Little and Mr. Fatone, Mr. brooks has alleged that he is related to Garth Brooks and has claimed that he is one of two people in North Carolina the President contacted when there was a disaster. Mr. Brooks also told coworkers he was one of fifty people in the United States who are flown to Washington, D.C. for special treatments for a disease he contracted in Operation Desert Storm. Mr. Brooks was terminated when he broke a sign and refused to pay for the damage.
11. On 9 November 2007, plaintiff sustained finger lacerations while installing a flag pole for defendant-employer. After the incident, plaintiff returned to defendant-employer's shop where supervisors helped him clean his hand and purchased $35.00 worth of bandages for the *Page 6 
wounds. Plaintiff did not want to go to the hospital and delayed seeking further medical treatment until the next day when Mr. Fatone drove him to the emergency room. At no time while he was at the emergency room did plaintiff report any incident that had occurred one month prior, or experiencing shoulder pain that he now contends has been continuous since 7 October 2007.
12. On 11 August 2008, plaintiff assisted Mr. Little in lifting a jet-ski trailer onto a truck bed. At that time, plaintiff did not inform anyone that he sustained an injury or aggravated an existing condition. In fact, plaintiff continued working the remainder of the day and the following day without complaints.
13. On the evening of 12 August 2008, plaintiff was examined at the Cape Fear Valley Medical Center emergency room and reported experiencing left arm and chest discomfort. Medical providers noted that plaintiff's symptoms began approximately four weeks previously, and had worsened over past few days. Plaintiff was discharged with prescriptions for pain and anti-inflammatory medications, and a release to return to work.
14. Two or three weeks prior to 11 August 2008, plaintiff told coworkers that he was experiencing back pain which he attributed to having moved furniture over a weekend.
15. Approximately one week prior to 11 August 2008, plaintiff discussed his personal tax problems with both Mr. Fatone and Mr. Little. On separate occasions, plaintiff informed them that he had received a package from the Internal Revenue Service and that he was afraid to open it because he might owe approximately $50,000.00 in tax penalties. Plaintiff had raised this issue before and informed coworkers that he had been sending money to his daughters so that they would not file taxes and he could claim them as dependents.
16. On 13 August 2008, while plaintiff and Mr. Little were returning from Raleigh, *Page 7 
plaintiff informed Mr. Little that he was experiencing severe left shoulder pain.
17. Plaintiff has not returned to work for defendant-employer subsequent to 13 August 2008.
18. On 18 August 2008, plaintiff returned to the emergency room due to pain in his left side and because he feared he was having a heart attack. Plaintiff underwent a cervical CT scan, the results of which demonstrated osteophytosis contributing to mild stenosis at the C5-C6 and C6-C7 levels. Overall, the results of the CT scan were unremarkable and plaintiff was diagnosed with cervical and muscle strains and discharged with prescriptions for muscle relaxers and pain medications. On 21 August 2008, plaintiff was examined at Cape Fear Neurosurgery, and was released to return to work.
19. On 13 October 2008, plaintiff began working thirty (30) hours per week as a courtesy technician at Jiffy Lube earning $7.50 per hour.
20. On 29 January 2009, plaintiff was examined by Dr. Wenda McCutchan who noted that he experienced no cervical pain during range of motion tests and that there was no left shoulder tenderness or reduced range of motion. Dr. McCutchan testified that at this initial examination, plaintiff reported no 2007 or 2008 workplace injuries.
21. On 19 February 2009, plaintiff returned to Dr. McCutchan and reported experiencing left shoulder pain that had began approximately two years previously. On
13 March 2009, Dr. McCutchan opined that plaintiff had multiple areas of arthritis in his neck. On 20 March 2009, plaintiff underwent a NCV/EMG study to his upper left side, which revealed moderate abnormalities consistent with a subacute to chronic C8-T1 radiculopathy.
22. At her deposition, Dr. McCutchan could only state with a reasonable degree of medical certainty that the injuries which caused plaintiff's problems had occurred prior to seeing *Page 8 
her and could have multiple causes.
23. On 17 May 2009, plaintiff was examined by Dr. David Kee upon the referral by Dr. McCutchan. Dr. Kee's initial diagnosis was loss of left arm muscle mass, decreased perception of touch, and decreased reflexes on the left side. In reading a February 2009 MRI, Dr. Kee opined that plaintiff had a large ruptured disc at C5-C6, superimposed upon degenerative changes at both the C5-C6 and C6-C7 levels. Dr. Kee further opined that the pain and tingling in plaintiff's left arm were caused by the ruptured disc.
24. As for treatment, Dr. Kee testified that plaintiff refused conservative care and was more interested in spinal surgery. On 2 June 2009, Dr. Kee performed a two-level fusion surgery to plaintiff's cervical spine. During the procedure, Dr. Kee removed the vertebral discs at the C5-C6 and C6-C7 levels. At his deposition, Dr. Kee was unable to testify with certainty when plaintiff's herniated disc occurred.
25. When asked his opinion as to the cause of plaintiff's neck injuries, Dr. Kee stated that he had not received any information regarding his medical history from other medical providers. Instead, Dr. Kee testified that his diagnosis and treatment were based solely upon what plaintiff related to him. Dr. Kee has opined that the probable causes of plaintiff's injuries were the work-related incidents in 2007 and 2008 that were reported to him by plaintiff.
26. As opposed to the testimony of Mr. Little and Mr. Fatone, the undersigned gives less weight to plaintiff's testimony regarding any workplace incidents occurring on 1 October 2007 or 11 August 2008.
27. Dr. Kee's testimony and opinions on the issue of causation are given little weight by the undersigned given that plaintiff was his sole source of information about plaintiff's prior medical history. *Page 9 
28. Plaintiff has failed to produce sufficient evidence upon which to find that on 1 October 2007 he sustained an injury by accident arising out of and in the course of his employment with defendant-employer involving his left shoulder and has failed to produce sufficient evidence upon which to find that on 1 October 2007 he sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident or otherwise.
29. Plaintiff has failed to produce any credible evidence upon which to find that on 11 August 2008, he materially aggravated his pre-existing, allegedly work-related left shoulder and cervical conditions.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, the claimant has the burden of proving that their claim in compensable, and the burden of proving each and every element of compensability. Henry v. A.C. LawrenceLeather Company, 231 N.C. 477, 57 S.E.2d 760 (1950);Harvey v. Raleigh Police Department,96 N.C. App. 28, 384 S.E.2d 549 (1989).
2. Plaintiff has failed to produce sufficient evidence upon which to conclude that on 1 October 2007 he sustained an injury by accident arising out of and in the course of his employment with defendant-employer involving his left shoulder, and has failed to produce sufficient evidence upon which to conclude that on 1 October 2007 he sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident or otherwise. N.C. Gen. Stat. § 97-2(6). *Page 10 
3. Plaintiff has failed to produce any credible evidence upon which to conclude that on 11 August 2008, he materially aggravated his pre-existing, allegedly work-related left shoulder and cervical conditions. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr. 129 N.C. App. 361, 499 S.E.2d 197 (1998).
4. Plaintiff's claims are not compensable pursuant to the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claims are hereby DENIED.
2. Each side shall pay its own costs.
This the 21st day of June, 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1