***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Harris.
 *********** EVIDENTIARY MATTERS
In the discretion of the Full Commission, Plaintiff's motion filed April 14, 2010 to admit additional evidence is hereby DENIED.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the provisions of the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction over this claim.
2. An employment relationship existed between Defendant-Employer and Plaintiff at all relevant times.
3. Stonewood Insurance Company was the carrier on the risk at all relevant times.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Transcript of Plaintiff's Recorded Statement
 • Exhibit 4: Plaintiff's discovery responses
 • Exhibit 5: Plaintiff's medical bills
 • Exhibit 6: Plaintiff's medical records
The following documents were accepted into evidence as Defendants' exhibits:
 • Exhibit 1: Employee hours report
 • Exhibit 2: Invoice
A transcript of the deposition of the following was also received post-hearing:
 • Dr. James M. Previll *Page 3 
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 43 years old, with a date of birth of March 18, 1967. He started working with Defendant-Employer as a delivery man in about 2006. His job was to deliver and install appliances in customers' homes.
2. On Friday, May 23, 2008, Plaintiff and another employee, Clifton Redick, were delivering a new washer and dryer to a customer's home. As part of the job, Plaintiff and Redick had to remove the old washer from a washroom that was upstairs in the home. The customer would not let them use a hand truck because she was afraid it would damage her hardwood floors, so Plaintiff and Redick had to carry the old washer down the steps. The washer had broken down mid-cycle and was still full of water.
3. Plaintiff and Redick arranged themselves so that Redick was on the lower side of the washer and Plaintiff was on the upper side, stooping down and holding the bottom of the washer, as they carried it down the steps. As they were carrying the washer down the steps, Plaintiff felt three pops in his back. He yelled out in pain, and the two men set the washer down on the steps. The customer was irate that the washer was on her steps, so, after a few moments, the two men picked it back up and got it down the rest of the steps, where they were able to set it down on some cardboard that was protecting the floor. Plaintiff then went outside for a few minutes to try to walk it off.
4. After about 15 minutes, most of which Plaintiff spent hunched over the back of the delivery truck, Plaintiff and Redick finished up this delivery. *Page 4 
5. Plaintiff and Redick did two more deliveries that day, both of which involved smaller items that Redick was primarily able to handle. Plaintiff's pain came and went the rest of the day. They finished up about 7 p.m., and Plaintiff went home without reporting the incident to his supervisor.
6. The next morning, Plaintiff woke up and could not move his legs or toes, and he called Jimmy Page, the weekend supervisor, and reported that he would not be able to go into work that day because he had hurt his back on the job the day before.
7. Page instructed Plaintiff to go to the doctor and not to return to work without a note.
8. On May 25, 2008, Plaintiff went to the emergency room at Pitt Memorial Hospital. He was prescribed pain medications and referred for follow up with Carolina East Medical Associates (CEMA).
9. Plaintiff saw Dr. David R. Swarner at CEMA on May 28, 2008. Dr. Swarner noted that Plaintiff had pain in the lumbosacral region. Dr. Swarner diagnosed muscle spasms and lumbago, prescribed pain medications and ordered a lumbar X-ray.
10. The X-rays of Plaintiff's lumbar spine were read to show normal disc and vertebral body heights. As such, they were interpreted as negative.
11. On December 4, 2008, Plaintiff saw Dr. Christopher Karkut at ECU Physicians. Dr. Karkut was a resident under the supervision of Dr. Previll. Plaintiff complained of low back pain rated as 3/10. Plaintiff stated that his pain had improved initially after the May 23, 2008 incident but was now worsening. Dr. Karkut prescribed pain medications and recommended that Plaintiff undergo an MRI. He suggested that Plaintiff might have a disc herniation or spondylolisthesis. *Page 5 
12. On January 15, 2009, Plaintiff underwent a lumbar MRI, which was read to show the following: a slight reduction in lumbar lordosis; a broad-based disc bulge at L3-4 extending into both neural foramina, left more than right; moderate facet hypertrophy and ligamentum flavum thickening at L4-5, and; mild to moderate facet hypertrophy and broad-based disc bulge at L5-S1. The impression was lumbar spondylosis with bilateral L4-5 foraminal narrowing.
13. In March 2009, Plaintiff underwent physical therapy, with some improvement in his symptoms. However, he was discharged on March 27, 2009 because he felt at that time that the physical therapy was worsening his symptoms.
14. Based on the January 15, 2009 MRI, Dr. Previll agreed with the diagnosis of spondylolisthesis for Plaintiff. Dr. Previll explained that spondylolisthesis is essentially a weak place on a person's spine that can cause intermittent pain flare-ups. As he testified, Dr. Previll could neither determine when the spondylolisthesis developed, nor could he state whether the spondylolisthesis was chronic or traumatic in origin.
15. When asked whether the May 23, 2008 incident caused Plaintiff's back condition, Dr. Previll testified that it "certainly could" have. When asked whether the May 23, 2008 incident aggravated a pre-existing condition in Plaintiff's back, Dr. Previll testified that "this (incident) was the one that really may have hurt him. . . . I guess that's as much as I can say."
16. There is no other expert medical testimony in the record other than Dr. Previll's.
17. As of the hearing, Plaintiff continued to work for Defendant-Employer, in a light duty capacity, doing housekeeping. As of the hearing, he was working a very limited schedule of about five hours per week and also collecting unemployment compensation.
18. As of the hearing before the Deputy Commissioner, Plaintiff was still having pain and popping sensations in his low back. *Page 6 
19. The Full Commission finds Plaintiff's account of the incident to be credible and notes that it was corroborated by his co-worker, Mr. Redick. Plaintiff and Redick were Defendant-Employer's best delivery team and were put on the job with the demanding customer on May 23, 2008 for that reason.
 ***********
Based upon the foregoing Stipulations and Findings of Fact the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements. N.C. Gen. Stat. §§ 97-2(6), 97-2(9); Harvey v. RaleighPolice Depart.,96 N.C. App. 28, 384 S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 195 S.E.2d 141, 143, cert. denied283 N.C. 585, 197 S.E.2d 873 (1973).
2. In cases involving complicated medical questions, only an expert can give competent opinion testimony as to the issue of causation. Click v. Pilot Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Where medical opinion testimony is required, "medical certainty is not required, [but] an expert's `speculation' is insufficient to establish causation."Holley v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Furthermore, the causal relationship must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility."Holley, 357 N.C. at 232, 581 S.E.2d at 753.
3. In this case, there is not sufficient expert medical evidence in the record establishing a causal link between the May 23, 2008 incident and Plaintiff's back condition, *Page 7 
either as a direct cause of said condition or as a material aggravation of a pre-existing condition. As such, Plaintiff has not shown that he sustained a compensable injury to his back in the specific traumatic incident of May 23, 2008. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff is not entitled to compensation under the North Carolina Workers' Compensation Act. Id.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is DENIED.
2. Each side shall bear its own costs. As part of their costs, if they have not done so already, Defendants SHALL pay the expert witness fee to Dr. Previll, which was previously Ordered on September 14, 2009.
This the 6th day of July 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION: *Page 8 
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1