***********
The undersigned have reviewed the prior Amended Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes and enters the following Opinion and Award:
 *********** EVIDENTIARY MATTERS
Defendants filed a Motion to Stay the Opinion and Award of Deputy Commissioner Holmes on May 6, 2010. The Full Commission finds based on the arguments of the parties, that Defendants' Motion is without good grounds and is hereby DENIED.
 *********** *Page 2 
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer.
3. The carrier liable on the risk is correctly named.
4. The parties have stipulated that the relevant compensation rate is the maximum rate for 2007 in the amount of $754.00 per week.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 58 years old.
2. Plaintiff resides in Wilmington, North Carolina, and has an undergraduate degree in teaching as well as two Master's degrees in business and management.
3. Plaintiff has a vocational history of teaching business with Brunswick County Schools and special education with New Hanover County schools.
4. Plaintiff was employed by Defendant-Employer Brunswick County Schools on September 18, 1995. She was assigned to Brunswick County Schools as a Career and Technology Education Career Development Coordinator. *Page 3 
5. The parties stipulated that the compensation rate in this claim is the maximum rate for 2007, $754.00 per week.
6. Plaintiff stated her first exposure to mold was in February of 2003, when mold was discovered in her office. She stated mold had grown on many of her personal belongings in the room and therefore were thrown away when the office was cleaned.
7. Plaintiff was evaluated by Dr. George Brinson of Wilmington Ear, Nose, and Throat Associates on February 18, 2003, where she was diagnosed with head congestion, sinus drainage, and a headache.
8. Plaintiff was again exposed to mold in 2004. The custodians reported to the principal who then brought in a cleaning crew. Plaintiff had to throw out some of her personal items again.
9. On December 9, 2004, Plaintiff was diagnosed by Dr. Brinson with congestion, sinus infection, and sore throat.
10. Dr. Brinson wrote a letter to Dr. Scott Visser on December 15, 2004, stating Plaintiff had bilateral inferior turbinate hypertrophy with clear rhinorrhea, a septal deflection to the left, acute sinusitis, and acute rhinitis.
11. Plaintiff's next exposure to mold was following the summer break of 2006 when she found mold beginning to grow on the door next to her. The mold was cleaned; however, Plaintiff re-cleaned her office herself with Clorox and Lysol as she had always done in the past.
12. On November 14, 2006, Plaintiff was first evaluated by Dr. Richard Workman of Jackson Eye Associates. Dr. Workman noted Plaintiff had experienced red and swollen eyes for approximately three days. Dr. Workman noted it was a "standard contact type of problem" due to being in contact with an allergen which then initiated an allergic reaction. *Page 4 
13. Dr. Brinson diagnosed Plaintiff with a sore throat and sinus drainage for one week on December 11, 2006.
14. Plaintiff continued to work in the office where the mold was found.
15. Plaintiff stated when she returned to work following summer break in 2007, she was told by the custodian that a considerable amount of her personal items had to, once again, be thrown away due to the mold that was found in her office.
16. Plaintiff stated the custodians told her all the mold had been cleaned out of her office. However, when she began cleaning, as she always did when coming back from summer break, she found mold on the side of a cabinet that she had pulled out to clean.
17. Plaintiff and custodians Donnie Myers and Dorothy Mosley informed the principal. The principal ordered an air quality control check of Plaintiff office. The test reported there were more than 41,000 mold spores in Plaintiff's office.
18. Plaintiff worked in that office for three-and-a-half years. Her office did not have air conditioning or heat.
19. The office was cleaned once again upon finding mold. However, upon return to her office, Plaintiff could still smell the mold.
20. Plaintiff stated she was moved to an alternate office approximately ten feet from her former office.
21. In October 2007, Plaintiff began working from home due to the exposure to mold making her sick. However, due to having to upload records, gather data from students, and other tasks, Plaintiff was required to return to the school to pick up records in order to accurately perform her job. Plaintiff stated when she would enter the school to obtain these records, she would become infected once again. *Page 5 
22. When Plaintiff is not being exposed to the mold, her symptoms decline but do not fully resolve.
23. Plaintiff was evaluated by Doctors Vision Center on October 10, 2007, where it was noted she had no improvement with the medications and that her eyes were getting worse. Plaintiff was diagnosed with anterior uveitis and recommended she be sent for additional medical testing if her condition became worse.
24. Plaintiff was first evaluated by Dr. Thomas Bumbalo of Wilmington Health Associates on November 5, 2007, where he noted Plaintiff was experiencing shortness of breath, symptoms of sleep apnea, cough, and sinus congestion. In addition, Dr. Bumbalo noted Plaintiff's allergic rhinitis was due to her working conditions and he diagnosed her with allergic rhinitis and sleep apnea. She was taken out of work until resolution of her eye symptoms. Dr. Bumbalo testified that there is no evidence that her exposure to mold caused the Plaintiff's sleep apnea.
25. On November 26, 2007, Dr. Bumbalo noted Plaintiff was positive for recurrent eye inflammation when she returned to her workplace. Dr. Bumbalo diagnosed her with allergic rhinitis and determined Plaintiff could not return to her workplace until the molds were cleared from the environment.
26. Plaintiff was evaluated by Dr. Bumbalo on October 21, 2008, where he noted she was positive for recurrent irritated eyes (while back at her workplace), cough, weak voice, and poor energy. Dr. Bumbalo also noted molds were found at her workplace.
27. On November 21, 2008, Dr. Bumbalo noted Plaintiff had been out of work for the past four weeks and that she felt immediately worse when she returned to work. Dr. Bumbalo diagnosed Plaintiff with allergic rhinitis and sleep apnea; he recommended she stay out of work, and be considered temporarily disabled. *Page 6 
28. Dr. Bumbalo opined to a reasonable degree of medical certainty that the workplace exposure to mold caused Plaintiff's allergies.
29. Dr. Bumbalo opined to a reasonable degree of medical certainty that the mold Plaintiff was exposed to at work is what exacerbated, triggered, and activated the allergic rhinitis.
30. Dr. Bumbalo opined to a reasonable degree of medical certainty that "the person who is placed in the moldy environment is more susceptible to develop or aggravate allergic rhinitis than someone who is not so exposed."
31. The Full Commission finds, based on the greater weight of the medical evidence, that Plaintiff's employment placed her at greater risk than the general public of developing allergic rhinitis and that Plaintiff's employment caused her to develop allergic rhinitis.
32. Plaintiff has been out of work since January 5, 2009.
33. Plaintiff stated when she comes into contact with mold she has chronic fatigue, her eyes become itchy and red, and she has extreme difficulty breathing and talking.
34. Plaintiff was out of work from October 10, 2007, through October 15, 2007, due to the development of allergic rhinitis caused by mold exposure. She then began working at home as much as she could from October 16, 2007, through December 16, 2007.
35. Plaintiff returned to the school on December 17, 2007, and worked in the school building until November 13, 2008. She then worked part-time from home through January 4, 2009, and has been out of work since January 5, 2009, as she cannot work fully from home and going into the school building causes her symptoms to return immediately. There is no evidence that her Employer has reassigned the Plaintiff to another school which does not have a mold problem.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, Plaintiff has the burden of proving every element of compensability. As part of this burden, Plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony. Holley v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003); Harvey v. RaleighPolice Department, 96 N.C. App. 28, 35, 384. S.E.2d 549, 553, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989).
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), Plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the Plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the Plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v.Tultex Corp./Kings Yarn, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983);Fann v. Burlington Indust.,59 N.C. App. 512, 296 S.E.2d 819 (1982); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v. FreightCarriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980).
4. Plaintiff has proven by the greater weight of the evidence that her employment with Defendant-Employer placed her at greater risk than the general public of developing allergic *Page 8 
rhinitis. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp./KingsYarn, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. Plaintiff has proven by the greater weight of the evidence that her employment with Defendant-Employer caused her to develop allergic rhinitis. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp./KingsYarn, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983); Fann v.Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982);Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
6. Given the credible medical and vocational evidence of record, and as a result of her compensable occupational disease, Plaintiff is temporarily totally disabled and is entitled to compensation at the rate of $754.00 per week for the period of time from October 10, 2007, through October 15, 2007, and January 5, 2009, through the present and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to payment for all medical expenses related to Plaintiff's compensable occupational disease which are designed to affect a cure, give relief or lessen the period of Plaintiff's disability. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay Plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $754.00 per week from October 10, 2007, *Page 9 
through October 15, 2007, and January 5, 2009, through the present and continuing until further Order of the Commission. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay all of Plaintiff's medical expenses incurred or to be incurred as a result of the compensable occupational disease, subject to the provisions of N.C. Gen. Stat. § 97-25.1. . This does not include any payment for her sleep apnea.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to Plaintiff in paragraph one (1) above, is hereby approved to be deducted from the lump sums accrued and thereafter, every fourth (4th) payment due Plaintiff shall be paid directly to Plaintiff's attorney
4. Defendants shall pay the costs.
This the 24th day of August, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1